# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------X

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

                              Plaintiffs,                      **SUMMONS**

        vs.                                                Index No.:

UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC,
UBER USA LLC, ACHT-NY, LLC, ACHTZEHN-NY, LLC,
DANACH-NY, LLC, DREIST-NY, LLC, DREIZEHN-NY,
LLC, DRINNEN-NY, LLC, EINS-NY, LLC, ELF-NY, LLC,
EINUNDZWANZIG- NY, LLC, FUNF-NY, LLC,
FUNFZEHN-NY LLC, GRUN, LLC, HINTER, LLC,
NEUN-NY, LLC, NEUNZEHN-NY, LLC, SCHMECKEN,
LLC, SECHS-NY, LLC, SIEBEN-NY, LLC, SIEBZEHN-NY,
LLC, UNTER, LLC, VIER-NY, LLC, VIERZEHN-NY, LLC,
WEITER, LLC,  ZEHN-NY, ZWANZIG-NY  LLC,
ZWEI-NY, LLC, ZWOLF-NY, LLC, jointly and severally,

                              Defendants.

-------------------------------------------------------------------------------X

To the above named Defendant(s)

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy
of your answer, or , if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within 20 days after the date of service (or within 30
days after the service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded in the complaint.

Dated: Bronx, New York
        October 20, 2017

                              Very truly yours,

                              LUIGI IZZO, ESQ.
                              *Law Offices of*
                              *Joseph A. Romano, P.C.*
                              1776 Eastchester Road, #210
                              Bronx, New York 10461
                              Direct Line: (914) 339-2605
                              Fax: (845) 213-4291

Uber Technologies, Inc.
1455 Market Street, 4th Floor
San Francisco, CA 94103

Uber Logistik, LLC
1455 Market Street, 4th Floor
San Francisco, CA 94103

Uber USA, LLC
1455 Market Street, 4th Floor
San Francisco, CA 94103

Unter, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Hinter, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Weiter, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Schmecken, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Danach-NY, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Grun, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Dreist-NY, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Drinnen-NY, LLC
27-55 Jackson Avenue
Long Island City, NY 11101

Sieben-NY, LLC
628 West 28th Street
New York, NY 10001
Vier-NY, LLC
628 West 28th Street
New York, NY 10001

Zwei-NY, LLC
628 West 28th Street
New York, NY 10001

Funf-NY, LLC
628 West 28th Street
New York, NY 10001

Zehn-NY, LLC
628 West 28th Street
New York, NY 10001

Neun-NY, LLC
628 West 28th Street
New York, NY 10001

Acht-NY, LLC
628 West 28th Street
New York, NY 10001

Eins-NY, LLC
628 West 28th Street
New York, NY 10001

Sechs-NY, LLC
628 West 28th Street
New York, NY 10001

Vierzehn-NY, LLC
628 West 28th Street
New York, NY 10001

Zwolf-NY, LLC
628 West 28th Street
New York, NY 10001

Elf-NY, LLC
628 West 28th Street
New York, NY 10001

Funfzehn-NY, LLC
628 West 28th Street
New York, NY 10001

Neunzehn-NY, LLC
628 West 28th Street
New York, NY 10001

Zwanzig-NY, LLC
628 West 28th Street
New York, NY 10001

Sechzehn-NY, LLC
628 West 28th Street
New York, NY 10001

Dreizehn-NY, LLC
628 West 28th Street
New York, NY 10001

Einundzwanzig-NY, LLC
628 West 28th Street
New York, NY 10001

Siebzehn-NY, LLC
628 West 28th Street
New York, NY 10001

Achtzehn-NY, LLC
628 West 28th Street
New York, NY 10001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

Index No.:

CLASS
ACTION
COMPLAINT

**Jury Trial
Demanded**

Plaintiffs,

vs.

UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC, UBER
USA LLC, ACHT-NY, LLC, ACHTZEHN-NY, LLC,
DANACH-NY, LLC, DREIST-NY, LLC, DREIZEHN-NY, LLC,
DRINNEN-NY, LLC, EINS-NY, LLC, ELF-NY, LLC,
EINUNDZWANZIG- NY, LLC, FUNF-NY, LLC, FUNFZEHN-NY
LLC, GRUN, LLC, HINTER, LLC, NEUN-NY, LLC, NEUNZEHN-
NY, LLC, SCHMECKEN, LLC, SECHS-NY, LLC, SIEBEN-NY,
LLC, SIEBZEHN-NY, LLC, UNTER, LLC, VIER-NY, LLC,
VIERZEHN-NY, LLC, WEITER, LLC,  ZEHN-NY,  ZWANZIG-
NY  LLC,  ZWEI-NY, LLC, ZWOLF-NY, LLC, jointly and
severally,

Defendants.

------------------------------------------------------------------------X

Plaintiffs GUSTAVO CAMILO, by their attorneys, for him and on behalf of all

others similarly situated, allege as follows upon personal knowledge as to their own acts,

and upon information and belief based in part upon the investigation conducted by

counsel:

### SUMMARY OF CLAIMS

1.  This is a class action brought by Plaintiffs against **UBER TECHNOLOGIES, INC.,**

    **UBER LOGISTIK, LLC, UBER USA LLC, ACHT-NY, LLC, ACHTZEHN-NY,**

    **LLC, DANACH-NY, LLC, DREIST-NY, LLC, DREIZEHN-NY, LLC,**

    **DRINNEN-NY, LLC, EINS-NY, LLC, ELF-NY, LLC, EINUNDZWANZIG-**

    **NY, LLC, FUNF-NY, LLC, FUNFZEHN-NY LLC, GRUN, LLC, HINTER,**

LLC, NEUN-NY, LLC, NEUNZEHN-NY, LLC, SCHMECKEN, LLC, SECHS-NY, LLC, SIEBEN-NY, LLC, SIEBZEHN-NY, LLC, UNTER, LLC, VIER-NY, LLC, VIERZEHN-NY, LLC, WEITER, LLC, ZEHN-NY, ZWANZIG-NY LLC, ZWEI-NY, LLC, ZWOLF-NY, LLC, (collectively referred to as "Defendants,"). Plaintiffs were employed by Defendants as Taxi Drivers, and bring suit both on their own behalf, and on behalf of a class that consists of all Taxi Drivers employed and contracted by "Defendants" at any time between January 2014, and the date when judgment is entered in this action (the "Class", and the "Class Period").

2.  Defendants provides a transport service that allows drivers to sign up as drivers using their privately owned cars, to pick up and drive passengers for a fee.

3.  Defendants uses mobile technology to run for hire livery service and insurance business, arranging rides for passengers on non-fixed routes in exchange for compensation and providing insurance coverage to Defendants drivers (more specifically black car fund coverage to their New York drivers).

4.  Accordingly, Defendants to provide such Black Car Fund Insurance created numerous New York Domestic and Foreign Limited Liability Corporations to be able to comply with and provide said coverage under New York State Law.

5.  As a Black Car Fund registered based providers "Defendants" are required to collect a fee from every passenger (only from the passenger) in the amount of 2.5% of said fare. Defendants are not allowed to collect the 2.5% fee from their drivers but solely from their passengers.

6.  This fee would in turn allow their drivers to be afforded workers compensation in the event of an injury resulting as a work related accident.

7. However, Defendants which requires passengers to pay via credit card charged the 2.5% Black Car Fund Fee from the passenger instantly upon payment of said fare, and then also charged each driver the same 2.5% fee.

8. As a result, Defendants double charged every driver. Defendants further added all fees and taxes together and took up to 28% of gross earnings before Defendants take further deductions for sale tax and Black Car Fund Fees this Black Car Fee would in essence take more from the driver since the black car fee was not excluded from the Defendants calculation of earn wages for Plaintiffs.

9. Accordingly, Defendants' violated the NY EXC-EXCECUTIVE ARTICLE 6-F which does not allow bases to charge drivers directly the 2.5% fee associated with the black car fund. As a result, Plaintiffs and the Class were illegally, negligently, fraudulently, and unjustly deprived of the earned fares for their work.

10. Defendants wrongful deductions from Plaintiffs salary where not for any benefit to Plaintiffs.

11. Defendants wrongful combining of fees and taxes caused excess wages to be illegally withheld from Plaintiffs.

12. Defendants wrongful deductions from Plaintiffs salary were not authorized by Plaintiffs.

    As a result of Defendants' violations of the NYLL and NYCRR, Plaintiffs and the Class were illegally, negligently, fraudulently, and unjustly deprived of the earned fares for their work.

13. Further, Defendants, mandates that all Drivers enter into a contract with Defendants,. As set forth below, Defendants are in violation of its obligations pursuant to these

contracts and has engaged in fraudulent practices with respect to the contract terms. Defendants' contract and fraud violations amount to nothing less than outright theft.

14. Uber collects all monies from passengers and disburses such monies according to its own accounting procedures and policies.

15. The mere act of purchasing coverage works to prove that the independent contractor or any subcontractor does not believe an employee-employer relationship exists or is created. As applied here no Driver independently purchased their own Workers compensation as an employee-employer relationship existed.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Defendants since Defendants have numerous NY domestic limited liability companies with designated jurisdiction of New York County under CPLR § 301 and all Defendants do business in New York and are registered with the New York Black Car Fund.

17. Venue is proper under CPLR § 503 because Defendants' bases are located in this county, and TLC's principle officers are locate whom defendants bases are registered and license with to operate in New York County, Defendants provide their transportation service in, and because Plaintiffs reside in this county.

## COMMON FACTUAL ALLEGATIONS

18. Uber operates in New York City as a group of Black Car bases and one luxury limousine base, each of which is licensed by the New York City TLC.

19. Most Uber Drivers' vehicles are affiliated with these bases, each organized as a separate LLC. Uber, however, effectively operates its FHV bases as a unified company known as "Uber." All requests for the Uber service are made through the Uber

smartphone application (the Uber "app") and are dispatched to Uber Drivers through Uber's centralized dispatch network which also operates via the Uber app.

20. All FHVs licensed by the New York City TLC are required to be affiliated with a FHV base. Regardless of whether Plaintiffs' vehicles were affiliated with an Uber FHV base, all Uber dispatches they received were dispatched to them from one of the Defendant Uber FHV bases via the Uber app. As with most other Black Car bases, many of whose workers have been found to be employees by state and federal government agencies, Uber pays its drivers on a "commission only" basis. Uber passengers pay a full fare amount to Uber, which Uber, jointly with the Defendant FHV bases, remits to the Driver after deducting its fee of between 20 to 28%, depending on the type of service, vehicle used for the trip and tenure of the Driver. As discussed below, a variety of additional items are also deducted from the Drivers' commission pay.

21. At the time of their hire, and at varying times thereafter, all plaintiffs are required to enter into employment contracts with Uber.

22. Uber is deeply involved in marketing its transportation services, setting prices for services, selecting and qualifying its Drivers, regulating and monitoring their performance, and disciplining or terminating those who don't measure up to Uber's expectations.

## UBER MISCLASSIFIES DRIVERS AS INDEPENDENT CONTRACTORS

23. As an initial matter, Uber's contracts label all Drivers as "independent contractors" when they are/were in fact, employees of Uber.

24. Although Uber's Driver contracts frame a relationship with its Drivers that is

short on specifics, and explicitly disclaim any direction or control over its Drivers, these contracts, in addition to Uber's practices, create a level of control more pervasive and far- reaching than many other Black Car bases which have already been recognized as or deemed to be employers by the National Labor Relations Board and the New York State Department of Labor and the United States Department of Labor.

25. For workers' compensation insurance purposes, the term *employee* generally includes day labor, leased employees, borrowed employees, part-time employees, unpaid volunteers (including family members) and most subcontractors (specific exclusions listed under Identifying an Independent Contractor).

26. Many factors are used to decide whether an individual is an employee under the Workers' Compensation Law. If a business meets any of the criteria listed below, and the individual hired does not meet the criteria listed under independent contractors, or the services rendered are not specifically exempted as employment under the WCL, then that business must obtain a workers' compensation insurance policy.

### Identifying Independent Contractors in Non Construction Industries

27. The following are factors that a judge will consider to determine whether an individual is an independent contractor, and thus not an employee: Control the time and manner in which the work is to be done; and

28. Obtain a Federal Employer Identification Number from the Federal Internal Revenue Service (IRS) or have filed business or self-employment income tax returns with the IRS based on work or service performed the previous calendar year;

29. Maintain a separate business establishment from the hiring business;

30. Perform work that is different than the primary work of the hiring business and perform work for other businesses;

31. Operate under a **specific** contract, and is responsible for satisfactory performance of work and is subject to profit or loss in performing the <u>specific</u> work under such contract, and be in a position to succeed or fail if the business's expenses exceed income.

32. <u>**Obtain a liability insurance policy (and if appropriate, workers' compensation and disability benefits insurance policies) under its own legal business name and federal employer identification number**</u>;

33. Have recurring business liabilities and obligations;

<u>**If it has business cards or advertises, the materials must publicize itself, not another entity;**</u>

Provide all equipment and materials necessary to fulfill the contract; and the individual works under his/her own operating permit, contract or authority.

## <u>PARTIES</u>

34. Plaintiff GUSTAVO CAMILO, is employed by Defendants as a driver for hire using the UBER APP from January 2014 until present date. Throughout his employment, Plaintiff GUSTAVO CAMILO resided in New York County, New York, and worked out of the greater New York City area located throughout New York County. Plaintiff has not opted-out of Uber's illegal and unenforceable arbitration agreement, and represents all Plaintiffs (the majority of all drivers employed by Uber) who too have not opted-out due to Uber's fraudulent and deceptive practices.

<u>**Defendants Uber Technologies, Inc.**</u>

35.    Uber Technologies, Inc. ("Uber Technologies") is a Delaware corporation. Uber Technologies maintains its headquarters at 1455 Market Street, 4th Floor, San Francisco, CA 94103.

36.    Uber Technologies operates twenty-eight (28) wholly owned subsidiaries in New York, each of which has held or currently holds a TLC license to operate a For-Hire Vehicle (FHV) Base.

37.    From January 2014 to on or about present date, Uber Technologies was a party to the contracts pursuant to which Drivers received dispatches from the Uber "app."

38.    Upon information and belief, Uber Technologies is the sole owner of Uber USA and Uber Logistik.

### Uber Logistik, LLC

39. Uber Logistik is a limited liability company organized under the laws of the state of Delaware on May 6, 2014.

40. On or about November 10, 2014 to on or about April 2, 2015, Uber Logistik was a party to the contracts pursuant to which drivers received dispatches from the Uber "app."

### Uber USA, LLC

41. Uber USA, LLC ("Uber USA") is a Delaware limited liability company, solely owned by Uber Technologies.

42. Uber USA states in its filings with the TLC that it is the "general member" of Uber's twenty-two (22) for hire vehicle bases.

43. From on or about April 3, 2015 to the present, Uber USA has been a party to the contracts pursuant to which drivers received dispatches from the Uber "app."

## The Uber For Hire Vehicle ("FHV") Bases

44. The Uber parents operate 28 wholly owned subsidiaries in New York, each of which has held or currently holds a TLC license to operate an FHV Base.

45. All of the Defendant FHV bases listed below manage the Uber workforce as they are responsible for providing the dispatches to each of the plaintiffs.

46. Upon information and belief, each and every Uber FHV base has held or currently holds a Certificate of Authority, issued by the New York State Department of Taxation and Finance for the collection of state taxes

47. The Uber FHV base subsidiaries are responsible under the N.Y. Tax Law for collection and payment of the 8.875% sales tax on black car rides.

48. Similarly, under the New York Executive Law, each FHV base is responsible for collecting and remitting a 2.5% surcharge on rides to the Black Car Fund ("BCF"), an injured workers fund for Black Car Drivers.

49. Upon information and belief, the Uber FHV bases deducted sales tax and Black Car Fund monies from driver earnings to remit to the state and the BCF, respectively.

## Unter, LLC (B02512)

50. Defendant Unter LLC ("Unter" or "Unter base") is a domestic limited liability company organized under the laws of the State of New York by Uber Technologies, its sole member, and, accordingly, Unter is a wholly owned subsidiary of Uber Technologies.

51. Unter was Uber's first FHV base in New York, operating under FHV base license #B02512 since December 31, 2011.

52. At various times, Unter was also the payor of Drivers' wages, listed on direct deposit

statements received by Drivers.

53. Unter maintains an office at 27-55 Jackson Ave, Long Island City, NY 11101, which

it shares with other Uber FHV Bases (hereafter "the Jackson Avenue Uber Offices").

**Hinter, LLC (B02598)**

54. Defendant Hinter LLC ("Hinter") is a domestic limited liability company organized

under the laws of the State of New York by Uber Technologies, its sole member, and,

accordingly, Hinter is a wholly owned subsidiary of Uber Technologies

55. Hinter operates a FHV base pursuant to license #B02598, issued between November

2012 and February 26, 2013, out of the Jackson Avenue Uber Offices.

**Weiter, LLC (B02617)**

56. Defendant Weiter LLC ("Weiter") is a domestic limited liability company organized

under the laws of the State of New York by Uber Technologies, its sole member, and,

accordingly, Weiter is a wholly owned subsidiary of Uber Technologies.

57. Weiter operates a FHV base pursuant to license # B02617, issued on or about

February 26, 2013, out of the Jackson Avenue Uber Offices.

**Schmecken, LLC (B02682)**

58. Defendant Schmecken LLC ("Schmecken") is a foreign limited liability company

organized under the laws of the State of Delaware by Uber Technologies employee

Josh Mohrer, its "sole member."

59. Upon information and belief, Schmecken is a wholly owned subsidiary of Uber

Technologies.

Schmecken operates a FHV base pursuant to license # B02682, issued on or about

August 29, 2013 out of the Jackson Avenue Uber Offices.

### Danach-NY, LLC (B02764)

60. Defendant Danach-NY LLC ("Danach-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber Technologies.

61. Upon information and belief, Danach-NY is a wholly owned subsidiary of Uber Technologies. Danach-NY operates a FHV base pursuant to license # B02764, issued on or about June 13, 2014 out of the Jackson Avenue Uber Offices.

### Grun, LLC (B02765)

62. Defendant Grun LLC ("Grun") is a foreign limited liability company organized under the laws of the State of Delaware by Uber Technologies employee Josh Mohrer, its sole member.

63. Upon information and belief, Grun 1s a wholly owned subsidiary of Uber Technologies.

64. Grun operates a FHV base pursuant to license# B02765, issued for on May 24, 2014, out of the Jackson Avenue Uber Offices.

### Dreist-NY, LLC (B02835)

65. Defendant Dreist-NY LLC ("Dreist-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Dreist-NY is a wholly owned subsidiary of Uber Technologies.

66. Dreist-NY operates a FHV base pursuant to license# B02835, issued on or about May 7, 2015, out of the Jackson Avenue Uber Offices.

### Drinnen-NY, LLC (B02836)

67. Defendant Drinnen-NY LLC ("Drinnen-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member,

and, accordingly, Drinnen-NY is a wholly owned subsidiary of Uber Technologies.

68. Drinnen-NY operates a FHV base pursuant to license # B02836, issued on or about May 8, 2015, out of the Jackson Avenue Uber Offices.

## Sieben-NY, LLC (B02864)

69. Defendant Sieben-NY LLC ("Sieben-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Sieben-NY is a wholly owned subsidiary of Uber Technologies.

70. Sieben-NY operates a FHV base pursuant to license# B02864, issued in or about mid-2015, out of its offices at 628 W. 28th St, NY, NY 10001 (hereafter the "West 28th Uber Offices."

## Vier-NY, LLC (B02865)

70. Defendant Vier-NY LLC ("Vier-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Vier-NY is a wholly owned subsidiary of Uber Technologies or USA.

71. Vier-NY operates a FHV base pursuant to license# B02865, issued on or about July 27, 2015, out of the West 28th Uber Offices.

## Zwei-NY, LLC (B02866)

72. Defendant Zwei-NY LLC ("Zwei-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Zwei-NY is a wholly owned subsidiary of Uber Technologies.

73. Zwei-NY operates a FHV base pursuant to license# B02866, issued on or about August 27, 2015, out of the West 28th Uber Offices.

### Funf-NY, LLC (B02867)

74. Defendant Funf-NY LLC ("Funf-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Funf-NY is a wholly owned subsidiary of Uber Technologies. Funf-NY operates a FHV base pursuant to license# B02867, issued on or about July 27, 2015, out the West 28th Uber Offices.

### Zehn-NY, LLC (B02869)

75. Defendant Zehn-NY LLC ("Zehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Zehn-NY is a wholly owned subsidiary of Uber Technologies.

76. Zehn-NY operates a FHV base pursuant to license # B02869, issued on or about August 12, 2015, out of the West 28th Uber Offices.

### Neun-NY, LLC (B02870)

77. Defendant Neun-NY LLC ("Neun-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Neun-NY is a wholly owned subsidiary of Uber Technologies.

78. Neun-NY operates a FHV base pursuant to license# B02870, issued on or about August 24, 2015, out of the West 28th Uber Offices.

### Acht-NY, LLC (B02871)

79. Defendant Acht-NY LLC ("Neun-NY") is a foreign limited liability company organized under the laws of the State of Delaware.

80. Upon information and belief, Uber USA is its sole member, and, accordingly, Acht-NY is a wholly owned subsidiary of Uber Technologies.

81. Acht-NY operates a FHV base pursuant to license# B02871, out of the West 28th

Uber Offices.


### Eins-NY, LLC (B02872)

82. Defendant Eins-NY LLC ("Eins-NY") is a foreign limited liability company

organized under the laws of the State of Delaware by Uber USA, its sole member,

and, accordingly, Eins-NY is a wholly owned subsidiary of Uber Technologies.

83. Eins-NY operates a FHV base pursuant to license # B02872, issued on or about mid-

2015, out of the West 28th Uber Offices.

### Sechs-NY, LLC (B02875)

84. Defendant Sechs-NY LLC ("Sechs-NY") is a foreign limited liability company

organized under the laws of the State of Delaware by Uber USA, its sole member,

and, accordingly, Sechs-NY is a wholly owned subsidiary of Uber Technologies.

85. Sechs-NY operates a FHV base pursuant to license# B02875, issued on or about

August 20 2015, out the West 28th Uber Offices.


### Vierzehn-NY, LLC (B02876)

86. Defendant Vierzehn-NY LLC ("Vierzehn-NY") is a foreign limited liability company

organized under the laws of the State of Delaware by Uber USA, its sole member,

and, accordingly, Vierzehn-NY is a wholly owned subsidiary of Uber Technologies.

Sechs-NY operates a FHV base pursuant to license# B02876, issued on or about

September 25, 2015, out of the West 28th Uber Offices.

### Zwolf-NY, LLC (B02877)

87. Defendant Zwolf-NY LLC (" Zwolf - NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Zwolf-NY is a wholly owned subsidiary of Uber Technologies.

88. Zwolf-NY operates a FHV base pursuant to license# B02877, issued on or about September 11, 2015, out the West 28th Uber Offices.

## Elf-NY, LLC (B02878)

89. Defendant Elf-NY LLC(" Elf-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Elf-NY is a wholly owned subsidiary of Uber Technologies.

90. Elf-NY operates a FHV base pursuant to license # B02878, issued on or about August 18, 2015, out of the West 28th Uber Offices.

## Funfzehn-NY LLC (B02879)

91. Defendant Funfzehn-NY LLC ("Funfzehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Funfzehn-NY is a wholly owned subsidiary of Uber Technologies.

92. Funfzehn-NY operates a FHV base pursuant to license # B02879, issued on or about September 22, 2015, out of the West 28th Uber Offices.

## Neunzehn-NY, LLC (B02880)

93. Defendant Neunzehn-NY LLC ("Neunzehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Neunzehn -NY is a wholly owned subsidiary

of Uber Technologies.

94. Neunzehn -NY operates a FHV base pursuant to license # B02880, out of the West 28th Uber Offices.

## Zwanzig-NY, LLC (B02882)

95. Defendant Zwanzig-NY LLC ("Zwanzing-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Zwanzig -NY is a wholly owned subsidiary of Uber Technologies

96. Zwanzig-NY operates a FHV base pursuant to license # B02882, issued on or about October 13, 2015, out of the West 28th Uber Offices.

## Sechzehn-NY, LLC (B02883)

97. Defendant Sechzehn-NY LLC ("Sechzehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Sechzehn-NY is a wholly owned subsidiary of Uber Technologies.

98. Sechzehn -NY operates a FHV base pursuant to license # B02883, issued on or about September 22, 2015, out of the West 28th Uber Offices.

## Dreizehn-NY, LLC (B02884)

99. Defendant Dreizehn-NY LLC ("Dreizehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Dreizehn-NY is a wholly owned subsidiary of Uber Technologies.

100. Dreizehn-NY operates a FHV base pursuant to license # B02884, issued on or about September 18, 2015, out of the West 28th Uber Offices.

## Einundzwanzig-NY, LLC (B02887)

Case 1:17-cv-09508-AKH    Document 1-1    Filed 12/04/17    Page 21 of 46

101.  Defendant Einundzwanzig-NY LLC ("Einundzwanzig-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Einundzwanzig-NY is a wholly owned subsidiary of Uber Technologies.

102.  Einundzwanzig-NY operates a FHV base pursuant to license# B02887, issued on or about September 4, 2015, out of the West 28th Uber Offices.

**Siebzehn-NY, LLC (B02888)**

103.  Defendant Siebzehn-NY LLC ("Siebzehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Siebzehn-NY is a wholly owned subsidiary of Uber Technologies.

104.  Siebzehn-NY operates a FHV base pursuant to license # B02888, issued on or about September 24, 2015, out of the West 28th Uber Offices.

**Achtzehn-NY, LLC (B02889)**

105.  Defendant Achtzehn-NY LLC ("Achtzehn-NY") is a foreign limited liability company organized under the laws of the State of Delaware by Uber USA, its sole member, and, accordingly, Achtzehn-NY is a wholly owned subsidiary of Uber Technologies.

106.  Achtzehn-NY operates a FHV base pursuant to license # B02889, issued on or about October 28, 2015, out of the West 28th Uber Offices.

All of the above-named Defendants are "employers" within the meaning of the FLSA and the NYLL.

107.  All of the above-named Defendants are engaged in commerce as defined in the FLSA, 29 U.S.C. §203(s).

108.   The Defendants parents operate wholly owned subsidiaries in New York, each of which has held or currently holds a TLC license to operate an FHV Base.

109.   All of the Defendant FHV bases listed below manage the Uber workforce as they are responsible for providing the dispatches to each of the plaintiffs.

110.   Upon information and belief, each and every Uber FHV base has held or currently holds a Certificate of Authority, issued by the New York State Department of Taxation and Finance for the collection of state taxes. The Defendants FHV base subsidiaries are responsible under the N.Y. Tax Law for collection and payment of the 8.875% sales tax on black car rides.

111.   Similarly, under the New York Executive Law, each Defendants FHV base is responsible for collecting and remitting a 2.5% surcharge on rides to the Black Car Fund ("BCF"), an injured workers fund for Black Car Drivers.

112.   Upon information and belief, the Defendants' FHV bases deducted sales tax and Black Car Fund monies from driver earnings to remit to the state and the BCF, respectively.

113.   Throughout the Class Period, Defendants maintained offices and/or bases in the State of New York and in New York County and conducted business at those locations, and in many other locations where Drivers carried out their work throughout the five boroughs of New York City and elsewhere in New York State using the Uber App. During the Class Period, Defendants employed approximately thousands of drivers (at any one time) in the Greater New York Area, and Plaintiffs estimate that the Class far exceeds that amount in total number of participants during the Class Period and includes a minimum of several thousand employees whom have

not opt-out of said contract terms.

114.    All requests for the Defendants' service are made through the Uber smartphone application (the Uber "app") and are dispatched to Defendants' Drivers through Defendants' centralized dispatch network which also operates via the Uber app.

115.    All FHVs licensed by the New York City TLC are required to be affiliated with a FHV base.

116.    Regardless of whether Plaintiffs' vehicles were affiliated with an Defendants' FHV base, all Uber's dispatches they received were dispatched to them from one of the Defendants' FHV bases via the Uber app.

117.    Plaintiffs allege that during the Class Period, each Defendant was the agent and employee of all other Defendants, and in performing the acts alleged in this Complaint, was acting within the course and scope of that agency and employment. Accordingly, any reference to "Defendant" or "Defendants" shall mean "Defendants and each of them. Defendants are individually, jointly and severally liable as the employers of Plaintiffs and of each Class member, because each Defendant, directly or indirectly, or through an agent or any other person, employed or exercised control over the wages, fares, and/or deductions of such Class members.

## CLASS ACTION ALLEGATIONS

118.    Plaintiffs bring this action as a class action on behalf of themselves and the Class pursuant to CPLR § 901.

119.    The representative Plaintiffs' claims are typical of those claims that could be alleged by any member of the class. The relief sought by the Plaintiffs is typical of the relief that would be sought by each member of the Class or subclass in

Case 1:17-cv-09508-AKH    Document 1-1    Filed 12/04/17    Page 24 of 46

separate actions. All members of either group were subject to the same policies

and practices alleged herein, including being

Mis-classified as independent contractors, taking of unlawful deductions through

retention of portions of Plaintiffs' wages. The aforesaid policies and practices of

Defendants similarly affect all Plaintiffs. The Plaintiffs and members of the class or any

subclass have sustained similar injuries and damages as a result of Defendants' unlawful

acts and/or omissions.

120.   Plaintiffs are informed and believe that there are thousands of members of the 121.

Class, and that the Class is so numerous that joinder is impractical.

There is a well-defined community of interest in the questions of law and fact affecting

the Class as a whole, such that the questions of law and fact common to all members of

the Class predominate over questions which may affect only individual Class members.

These common questions include, *inter alia,* the following:

121.   Whether Defendants wrongfully deducted monies from Class members' wages

and/or otherwise unlawfully required the Class members to pay for the Black Car

Fund provided by Defendants in violation of New York Labor Law § 193;

122.   Whether Defendants wrongfully deducted monies from Class members' wages

and/or otherwise unlawfully required the Class members to make payments directly

to the Black Car Fund in violation of New York EXC-EXCECUTIVE ARTICLE 6-F.

123.   Whether Defendants wrongfully deducted monies from Class members' wages

and/or otherwise unlawfully required the Class members to make payments to the

Black Car Fund after all ready collecting such fees directly from passengers and

fraudulently did not disclose such double charges to Drivers.

124.    Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to make payments to the Black Car Fund after all ready collecting such fees directly from passengers and as such Defendants were unjustly enriched.

125.    Whether Defendants wrongfully deducted monies from Class members' wages and/or otherwise unlawfully required the Class members to make payments to the Black Car Fund after all ready collecting Defendants' portion of such fees and then taking said deductions from Plaintiffs' net earnings and as such Defendants were unjustly enriched.

126.    Whether Defendants wrongfully were classified as independent contractors since defendants collect the Black Car Fee from said drivers and accordingly under New York State law must have been employees to do so.

127.    Whether the members of the Class have been damaged and, if so, the extent of such damages.

128.    As employees of Defendants, Plaintiffs assert claims that are typical of the claims of the Class. Plaintiffs were improperly charged by Defendants a 2.5% fee for the Black Car Fund, and Plaintiffs neither gave permission nor were aware of Defendants double charging of such fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no interests antagonistic to those of the other members of the Class. Plaintiffs have retained competent counsel who are experienced in the prosecution of class action litigation.

129.    Plaintiffs and other members of the Class have suffered damages as a result of Defendant's wrongful conduct. Because of the size of the claims of the individual

members of the Class, few, if any, members of the Class could afford to seek legal redress for the wrongs complained of herein. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the members of the Class likely will not obtain redress of their injuries, and Defendants will retain the proceeds of their violations of New York Labor Law §§ 193 and New York EXC-EXCECUTIVE ARTICLE 6-F 652.

### FIRST CLAIM FOR RELIEF

**Unlawful Wage Deductions (Violation of New York Labor Law § 193)**

130.   Plaintiffs repeat and re-allege the allegations set forth above, as though set forth in full herein.

131.   The Class includes all Drivers employed by Defendants in New York State and but for Defendants' fraudulent and deceptive practices chose not to opt-out of Defendants illegal and/or non-enforceable arbitration contract, during the Class Period. Defendants' employment, black car fund, and compensation/wage deductions practices were and are uniform throughout New York State in all respects material to the claims asserted in this Complaint.

132.   The New York Labor Law defines wages as "the earnings of an employee for labor or services rendered, regardless or whether the amount of earnings is determined on a time, piece, *commission* or other basis." N.Y. Lab. Law § 190(1). Furthermore, an "[e]arned commission" is defined as "a commission due for services … which is due according to the terms of an applicable contract…." N.Y. Lab. Law § 191-a(b).

133.   The New York Labor Law expressly prohibits an employer from making deductions from employees' wages.

**§ 193 provided in pertinent part: Deductions from wages.**

134.   No employer shall make any deductions from the wages of an employee, except

deductions which:

135.   are made in accordance with the provisions of any law or any rule or regulation

issued by any governmental agency; or

136.   are expressly authorized in writing by the employee and are for the benefit of the

employee; provided that such authorization is kept on file on the employer's

premises. Such authorized deductions shall be limited to payments for insurance

premiums, pension or health and welfare benefits, contributions to charitable

organizations, payments for United States bonds, payments for dues or assessments to

a labor organization, and similar payments for the benefit of the employee.

137.   No employer shall make any charge against wages, or require an employee to

make any payment by separate transaction unless such charge or payment is permitted

as a deduction from wages under the provisions of subdivision one of this section.


138. Section 193 thus prohibited deductions from employees' wages unless the

deductions were both (1) "expressly authorized" by and "for the benefit of" the

employee, and

(2) within one of the enumerated categories of permissible deductions.  It is well

established judicially that § 193 prohibits any forfeiture of earned wages and that it was

legislatively intended to prohibit arrangements between employers and their employees.

139.   Nevertheless, Defendants, pursuant to a unilaterally established and illegal policy,

made deductions from the wages due to Plaintiffs and members of the Class, or required

them to pay directly additional sums by separate transaction, for the Black Car Fund even

though prohibit by New York Law to deduct said fees directly from Drivers and all ready

collected directly from their passengers the 2.5% fee, hence giving no benefit to Plaintiffs

to have such fee collected by Defendants. Furthermore, Defendants' wrongfully took

their commission prior to adding and subtracting said taxes and BCF Fees from Plaintiffs

share of earned income from said fares.

140.   Requiring employees to pay such fees benefits the employer, not the employee,

and sets up Defendants actions of the type that § 193 was intended to prohibit.

141.   Thus, the deductions, charges and required payments at issue violate § 193 because

they were applied to wages that were already earned, and were neither for the benefit of

the employee nor of the limited type permitted by the statute.

142. In § 193(1)(b) as amended, the enumerated categories of permissible deductions

made "for the benefit of" an employee are expanded to include the following:

insurance premiums and prepaid legal plans;

pension or health and welfare benefits;

contributions to a bona fide charitable organization;

purchases made at events sponsored by a bona fide charitable organization affiliated with

the employer where at least twenty percent of the profits from such event are  being

contributed  to  a  bona  fide charitable organization;

United States bonds;

dues or assessments to a labor organization;

discounted parking or discounted passes, tokens,  fare cards, vouchers, or other items that

entitle the employee to  use mass transit;

fitness center, health club, and/or gym membership dues;

cafeteria and vending machine purchases made at the employer's place of business and

purchases made at gift shops operated by the employer, where the employer is a hospital,

college, or university;

pharmacy purchases made at the employer's place of business;

tuition, room, board, and fees for pre-school, nursery, primary, secondary, and/or post-

secondary educational institutions;

day care, before-school and after-school care expenses;

payments for housing provided at no more than market rates by non-profit hospitals or

affiliates thereof; and

similar payments for the benefit of the employee.


143. Defendant's deductions discussed above, however, do not fall within any of these

enumerated categories.

144. As a result of Defendant's improper deductions from wages (including required

separate payments from wages), Plaintiffs and the members of the Class were damaged in

an amount to be proved at trial.

145. Therefore, Plaintiffs demand, on behalf of themselves and the members of the Class,

reimbursement of all wages during the Class Period that Defendants deducted or charged

(or required to be paid to Defendants by separate transactions) in order to recover

Defendants' wrong direct deductions, plus interest and attorney's fees as provided by

law.

## SECOND CLAIM FOR RELIEF

### Defendant's Unlawful Tax and Surcharge Deductions constitutes Breach of Contract, Fraud, and Unjust enrichment

146. The NYLL prohibits employers from making any deductions from an employee's wages except those permitted by law. N.Y. Lab. Law §193.

147. Drivers' rates of pay were set forth in the form of fare rates published on its website and its app.

148. At all times relevant, Defendant made additional deductions from Drivers' pay to cover the cost of taxes and contributions to a Drivers Workers' Compensation Fund, the Black Car Fund.

149. In order to receive Uber dispatches, all Plaintiffs and similarly situated persons were required to either sign a paper copy, or electronically "accept" a "Software License and Services Agreement" (hereafter "Licensing Agreement" or "Agreement") on their phones to use the Uber App.

150. Uber's Licensing Agreement is over twenty pages long, but these Agreements did not specify the trip fare schedule set by Uber, a percentage of which Plaintiffs received as consideration for driving.

151. The trip fare schedule pertaining to a given Territory is set forth in a separate "Driver Addendum Related to Uber Services" and the "City Addendum" that Drivers did not view or sign at the time they accepted.

152. Trip fare schedules were subject to unilateral change by Uber and percentages due to Drivers under the Agreement could be changed unilaterally by Uber in subsequent addendums offered to Drivers.

153. In order to receive dispatches after a new Licensing Agreement, a Driver was required to agree to the new contract, which appeared on his or her phone, before any new dispatch could come in.

154. All Drivers sine 2014 were bound by contract with Uber to provide driving services m exchange for receipt of a percentage of the fare collected by Uber from passengers.

155. During this time, Drivers contracted with Uber to pay fees of 10%, 20%, 25% or 28%, depending on the service offered and the period during which services were offered.

156. The 2014 Agreements state that the Driver (referred to as "Transportation Company" or "Customer"), agrees that Uber will "deduct its Fee payable on all Fares earned by the Transportation Company and remit the remainder of the Fare to the Transportation Company."

157. Quite simply, the Agreements require Uber to collect the gross fare, and remit the fare to Drivers, minus Uber's Service Fee.

158. Nothing in these Agreements empowers Uber or any of its subsidiaries to remove any additional amounts from the fare.

159. Yet, at all relevant times, Uber and its subsidiaries collected the entire Fare from passengers, and remitted to Drivers the Fare minus Uber's fee, and additionally, minus sales tax and BCF surcharge amounts.

160. The Agreements plainly did not permit Uber to take the taxes and BCF surcharge amounts entirely from the Driver's portion, on top of the Service Fee that Uber states will be the only deduction from Driver-earned fares.

161. By so doing, Uber violated the Agreement and null and voided said contract to

Plaintiffs' detriment.

162. Pursuant to the Agreements in force from November 10, 2014 up to and including

the present, the Licensing Agreements likewise defined "Fare" to mean .the total amount

charged to the customer. Section 4.1 of these Agreements states that the Fare would be

"calculated based

upon a base fare amount plus/mileage and/or time amounts, as detailed for the applicable

Territory."

163. From November 10, 2014 to the present, Section 4.1 of Uber's Agreements has

stated that the Driver will "pay Uber a service fee on a per Transportation Services

transaction basis calculated as a percentage of the Fare ... as provided or otherwise made

available by Uber from time to time for the applicable Territory."

164. Section 4.4 of Uber's more recent Agreements states that Uber will remit to drivers

the Fare minus Uber's Service Fee. As with its earlier Agreements, nothing in Uber ' s

2014 and 2015 Agreements entitles Uber to take any additional amounts from Driver

earnings aside from Uber's percentage commission or "Service Fee."

An aggrieved party may avoid a contract based on misrepresentation where:

the assertion was either material or fraudulent; and

the person seeking to avoid the contract reasonably relied to his detriment on such

assertion. [Restatement § 162]

A misrepresentation is material if:

it would be likely to induce a *reasonable person* to agree to the bargain, or

the party who made the misrepresentation knew or should have known that it was *likely*

*to induce the other party* to manifest assent to the bargain, whether or not a reasonable

person would have been induced.

165. A misrepresentation is fraudulent if it was made with:

the intention of inducing the other party to rely on it, and knowledge of its falsity or lack

of adequate foundation for the representation.

166. While the more recent Agreements state that, in addition to charging a passenger for

the "Fare," the Driver is "also entitled" to charge User for taxes, and that the Driver is

responsible for collecting and remitting taxes, Uber knows that under the New York Tax

Law, black car bases are the vendor for sales tax purposes with a non-delegable to duty to

collect and remit sales taxes.

167. Furthermore, Uber knew that any reasonable Driver/employee would rely on

Defendants' promises that Plaintiffs' pay calculations would be the primary concern of

said contract.

168. Accordingly, Plaintiffs' should not be held to Defendants' contracts as there were

numerous material misrepresentations on how Defendants would distribute and deduct

said fees from Plaintiffs' earned wages.

169. At all times relevant, by dispatching under this Agreement, Uber, jointly with Uber's

subsidiary Black Car bases, were the vendors of transportation services under applicable

New York Tax Law.

170. As the vendor, Uber and its subsidiary Black Car bases were responsible to collect

and remit the tax.

171. As the vendor, Uber and its subsidiary Black Car bases were responsible to collect

and remit the tax and BCF as per Defendants contract terms.

172. At all times relevant, Uber was required to, and acknowledged that it was

responsible for, complying with the Tax Law.

173. Indeed, as Uber completely controls the electronic payment process, and Drivers are forbidden from accepting cash, there would be no way for the Driver to collect additional amounts independently.

174. At all times, Uber has itemized its receipts to show that every part of the Fare charged to the customer represents part of the consumer sales price for transportation services, broken down into separate charges for the base fare, the charge for distance, and the charge for time, respectively.

175. While payment for trips would be made from the passenger to Uber, consumer receipts state that rides were dispatched by an Uber subsidiary FHV base.

Uber and its subsidiaries, treating the tax as included within the fare charged to the passenger, then paid its Drivers the fare minus Uber's Service Fee, BCF, and sales tax amounts.

176. Uber and its subsidiaries also treat the BCF surcharge as included within the fare charged to the passenger, then paid its Drivers the fare minus Uber's commission and the BCF surcharge amount.

177. At all times, by deducting sales tax and BCF amounts from Driver earnings, Uber and its subsidiary Black Car bases made unlawful deductions from Plaintiffs' wages.

178. At all times, by deducting sales tax and BCF amounts from Driver earnings, Uber and its subsidiary Black Car bases made unlawful material misrepresentations the Plaintiffs' relied upon to their determent voiding any and all contract terms, including but not limited to arbitration clauses.

179. As the payor of sales tax monies, the Defendant subsidiary Uber FHV bases unlawfully deducted tax amounts from driver wages, in order to remit these amounts to

the state.

180. As the payor of BCF contributions, the Defendant subsidiary Uber FHV bases unlawfully deducted BCF surcharge amounts from driver wages, in order to remit these amounts to the BCF.

181. Plaintiffs have not been presented with any contracts from the Defendant FHV bases, and therefore they have not assented to arbitrate any disputes with any of the Uber subsidiary FHV bases who made these unlawful deductions.

182. Alternatively, although the Contract defines "Fare" to mean the total amount charged to the passenger (a combination of separate charges for a base fare amount, distance, and time, respectively), even if Defendants were to claim that the "Fare" referred to in the contract is the total charged fare, minus the portions that Uber has removed for sales tax and BCF surcharges, or that the Agreement somehow authorized Uber to deduct sales tax and BCF amounts from the Fare, Defendants would still have violated its Agreement by allowing the assessment of the Service Fee on the gross fare, including tax and BCF surcharges.

183. From November 10, 2014 to the present, the Agreements explicitly state that if the Fare includes any taxes, then Uber will assess its Service Fee on the Fare net of taxes. However, payment records state that Uber continued to assess its Service Fee on the gross fare, including amounts for tax and the BCF surcharge.

184. Since November 14, 2014, by Defendants apparently, at times, choosing to define the "Fare" as less than the amount Uber charged the passenger, Uber has not complied with its Agreement as it is assessing its commission on the gross fare, inclusive of sales tax and the Black Car Fund surcharge not received by the Driver.

Under this interpretation of "Fare" to mean a type of implied base fare, Defendants also

increased its commission by assessing the New York State sales tax, not only on the amount that Uber seemed to designate as the fare for sales tax purposes, but on the Black Car Fund surcharge, a non-taxable item.

185. Under any interpretation of the term "Fare," Uber has unlawfully deducted from Driver pay by profiting on the assessment of sales tax and a surcharge intended to benefit injured workers.

186. Although the Agreement at all times clearly defines "Fare" to mean the total charges for base fare, distance and time charged to the passenger, regardless of how Uber might try to define the term, Uber has violated its Agreement by unlawfully deducting amounts from Driver pay that the Agreement did not allow for.

Regardless of Plaintiffs' employment status, Defendants owe Plaintiffs and the class they seek to represent the amount calculated to be wrongfully withheld from their wages.

The NYLL prohibits employers from making any deductions from an employee's wages except those permitted by law. N.Y. Lab. Law §193.

At all times relevant, Defendant made additional deductions from Drivers' pay to cover the cost of taxes and contributions to a Drivers Workers' Compensation Fund, the Black Car Fund.

187. Quite simply, the Agreements require Defendants to collect the gross fare, and remit the fare to Drivers, minus Defendant's Service Fee.

188. Nothing in these Agreements empowers Defendants or any of its subsidiaries to remove any additional amounts from the fare.

189. Yet, at all relevant times, Defendants and its subsidiaries collected the entire Fare from passengers, and remitted to Drivers the Fare minus Defendant's fee, and

additionally, minus sales tax and BCF surcharge amounts.

190. The Agreements plainly did not permit Defendants to take the taxes and BCF

surcharge amounts entirely from the Driver's portion, on top of the Service Fee that

Defendants states will be the only deduction from Driver-earned fares.

By so doing, Defendants violated the Agreement to Plaintiffs' detriment.

191. Defendants knows that under the New York Tax Law, black car bases are the

vendor for sales tax purposes with a non-delegable to duty to collect and remit sales

taxes.

192. As the vendor, Defendants and its subsidiary Black Car bases were responsible to

collect and remit the tax and Black Car Fund Fees.

At all times relevant, Defendants were required to, and responsible for complying with

the Tax Law and New York applicable Laws.

193. Defendants completely control the electronic payment process, and Drivers are

forbidden from accepting cash, there would be no way for the Driver to collect additional

amounts independently.

194. At all times, Defendants have itemized its receipts to show that Black Car Fund

Fees were directly taken from Drivers pay checks.

195. While payment for trips would be made from the passenger to Uber, consumer

receipts state that the Black Car Fund Fees were taken as well.

At all times, by deducting sales tax and BCF amounts from Driver earnings, Defendants'

and its subsidiary Black Car bases made unlawful deductions from Plaintiffs' wages.

196. As the payor of sales tax monies, the Defendant subsidiary FHV bases unlawfully

deducted tax amounts from driver wages, in order to remit these amounts to the state.

As the payor of BCF contributions, the Defendants' subsidiary FHV bases unlawfully

deducted BCF surcharge amounts from driver wages, in order to remit these amounts to

the BCF Plaintiffs have not been presented with any contracts from the Defendant FHV

bases, and therefore they have not assented to arbitrate any disputes with any of the

Ubers' subsidiary FHV bases who made these unlawful deductions.

197. Defendants to deduct sales tax and BCF amounts from the Fare, Defendants would

still have violated its Agreement by allowing the assessment of the Service Fee on the

gross fare, including tax and BCF surcharges.

198. Payment records state that Defendants continued to assess its Commission Fee on

the gross fare, including amounts for tax and the BCF sur-charge.

199. Defendants owe monetary restitution to Plaintiffs under breach of contract, fraud

and unjust enrichment and the class they seek to represent the amount calculated to be

wrongfully withheld from their wages.

## DEFENDANTS ACTED SYSTEMATICALLY AND KNOWINGLY, INTENTIONALLY AND WILLFULLY.

200. On information and belief, all of the above common allegations as to Defendant's

treatment of the individual plaintiffs are typical of the way all Uber Drivers in New York

were hired, instructed, paid, and/or compensated.

201. Defendants committed the acts alleged in this complaint knowingly, intentionally

and willfully.

202. Defendants knew that the taking of unlawful deductions would economically injure

Plaintiffs and violate New York State laws.

203. Defendants, in violation of the NYLL, have also unlawfully made deductions from

the class action Plaintiffs' wages since at least on or about January 2014.

204. Defendants on or about May 2017, have publicly admitted their wrongful wage deduction practices and have offered their Drivers a $900.00 per Driver refund to try to mitigate Plaintiffs damages.

205. At no time has Defendants clearly disclosed their accounting records to show such $900.00 dollar offer truly compensates each driver fully.

However, Defendants offer fails to inform Plaintiffs that their previous practices were unlawful and caused Plaintiffs an significant loss of earnings that Plaintiffs are entitled to.

206. Defendants were unjustly enriched by their Fraudulent Practices. The class action Plaintiffs, at various times, electronically accepted Defendant's Licensing Agreement in order to receive Defendants dispatches.

207. The class action Plaintiffs also bring various common law claims for breach of contract and fraud, arising from Defendants' violations of their contractual obligations and various fraudulent misrepresentations made therein by Defendants.

### DEFENDANTS MAY NOT SEEK TO COMPEL ARBITRATION AS THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE AS AGAINST LAW AND PUBLIC POLICY

208. Defendants have placed in their Agreements, which Drivers must accept as a precondition of being assigned any dispatches, a provision which contains an arbitration agreement. The Driver has no bargaining power to resist this agreement, which is totally one sided in favor of Defendants.

209. The arbitration agreement requires all claims to be arbitrated.

The arbitration agreement prohibits any class claims, so for example if the approximately 40,000 Drivers in New York City were to arbitrate the question of their illegal

deductions, breach of contract, fraud, unjust enrichment, and employee status,
conceivably there would have to be 40,000 individual arbitrations on the same issue.
The arbitration agreement requires all claims generally applicable to workers to  be
arbitrated.

210. In June of 2015, the District Court in *Mohamed v Uber Technologies  et.   al.* 109 F.
Supp. 3d 1185, (N.D. Calif. 2015) found that all Uber contracts with arbitration
agreements through 2014, were either unconscionable or unenforceable under California
law. As a result, in December 2015, Uber changed the arbitration agreement and
circulated it to the Drivers. Plaintiffs allege that the arbitration provisions of the
Agreements are unconscionable and against public policy.

211. The agreement which prevents class claims violates substantive rights under the
National Labor Relations Act. The National Labor Relations Board in both *D. R. Horton,*
357 NLRB 184 (2012) and *Murphy Oil,* 363 NLRB 77 (2015) specifically determined
prohibitions on class claims do interfere with workers' ability to band together to protest
their working conditions and thus interfere with their rights to engage in protected
concerted activity and to organize under Section 7 of the National Labor Relations Act.

212. The U.S. Court of Appeals for the Seventh Circuit has affirmed Plaintiffs' position
that an arbitration clause prohibiting employee class or collective actions violates the
National Labor Relations Act. *Lewis v. Epic Sys. Corp.,* 2016 U.S. App. LEXIS 9638
(7th Cir. May 26, 2016).

213. As recent as July 18, 2017, the **Appellate Division of the First Department** found
in **Gold v. New York Life Ins. Co., that Plaintiffs cannot be required to arbitrate
collectively their disputes with Defendants because that obligation would run afoul**

of the National Labor Relations Act.

214. The **First Department agreed with the reasoning in Lewis v. Epic Sus Corp.,**

(823 F3d 1147 (7th Cir 2016) which denied employer's motion to proceed under

arbitration clause, **declining to enforce a clause that precluded employees from**

**seeking any class, collectively, or representative remedies to wage-and-hour disputes**

because this clause violates Section 7 and 8 of the NLRA.

As noted in this complaint, the factual allegations support a finding that Plaintiffs are

employees. They also establish that Defendants has been unlawfully deducting amounts

to be paid in Black Car Fund Fees from the Drivers' wages thus engaging in both

unlawful deductions as well as a breach of their own contracts.

215. Plaintiffs further allege that the arbitration agreement has no impact on the claims

plaintiffs are making against the FHV bases with respect to unlawful deductions from

wages or breach of contract as there are no contracts with the Defendants bases which, on

information and belief, are involved in the unlawful deductions from Plaintiffs' wages.

216. Under New York EXC-EXCECUTIVE ARTICLE 6-F., all Drivers are employees

of the Black Car Fund for the purpose of workers compensation benefits and for the

purpose of the Fund, as such Defendants arbitration agreement should not apply in such

context.

217. Lastly, Defendants should be barred from designating Plaintiffs as independent

contractors as only employers with registered Black Car Fund Bases can collect said

Black Car Fund Fees.

### THIRD CLAIM FOR RELIEF

### Breach of Contract

218. Plaintiffs, on behalf of themselves and those similarly situated, repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

Throughout the period covered by the applicable statute of limitations, defendants' action and omissions, as alleged above, in paragraphs constituted independent and separate breaches of the Licensing Agreement (contract) entered into by Plaintiffs and those similarly situated and Defendants.

219. As a direct and proximate result of Defendants' breaches, Plaintiffs and others similarly situated, have been damaged in an amount as yet to be determined.

**WHEREFORE**, in accordance with all of the above Claims for Relief, inclusive, Plaintiffs demand judgment in their favor and in favor of the other members of the Class, and against Defendants, individually, jointly and severally, for:

An order certifying this action to be a proper class action and designating Plaintiffs and the undersigned counsel as the representatives thereof;

Whether Plaintiffs and Class members were misclassified as independent contractors;

Whether Defendants complied with the record-keeping requirements of the NYLL;

Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants either unlawfully deducted from the wages of Plaintiffs and other Class members, or unlawfully required to be paid back to Defendants, during the Class Period, plus interest thereon at the statutory rate;

Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants that were unjustly enriched by said deducted wages of Plaintiffs and other Class members, plus interest thereon at the statutory rate;

Restitution and reimbursement to Plaintiffs, and to the other members of the Class, of all monies which Defendants that were fraudulently deducted from wages of Plaintiffs and other Class members, plus interest thereon at the statutory rate;

An Order setting aside any and all Contracts per Defendants' Material Misrepresentations as to wage calculations and deductions.

Imposition of a constructive trust upon the assets of the Defendants to the extent of the sums due to Plaintiffs and to members of the Class;

An order requiring Defendants to provide an accounting of all wages and all sums unlawfully deducted, charged back or withheld from compensation due to Plaintiffs and the other members of the Class;

An order declaring that Defendants' violations of the NYLL were willful;

An order temporarily, preliminarily and permanently enjoining and restraining Defendants from engaging in similar unlawful conduct as set forth herein;

Declaratory relief including declarations setting forth the rights of Plaintiffs and the members of the Class as alleged in this Complaint and setting forth the Defendants' violations of those rights;

Prejudgment interest;

Reasonable attorneys' fees, litigation expenses and costs of suit; and Such other and further relief as the Court deems just and equitable.

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: October 18, 2017          By: _____
New York, New York                   Luigi Izzo, Esq.
                                     The LAW OFFICES of JOSEPH A. ROMANO
                                     P.C.
                                     1776 Eastchester Road Suite 210
                                     Bronx, NY 10461
                                     Tel:  (914) 339-2605
                                     Fax:  (845) 891-0156
                                     Attorneys for Plaintiffs and the Class

## VERIFICATION

STATE OF NEW YORK, COUNTY OF BRONX      ss:

I, GUSTAVO CAMILO, being duly sworn, deposes and says:

I am of the plaintiff in the within action; I have read the foregoing SUMMONS &

COMPLAINT and know the contents thereof; the same is true to my own knowledge,

except as to those matters said to be upon information and belief as to those matters

the deponent believes to be true.

Dated: Bronx, New York
      October 17, 2017

_gustavo camilo_
GUSTAVO CAMILO

Sworn to me this 17

day of October, 2017

NOTARY PUBLIC
DENISE BREA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BR6213212
Qualified in Bronx County
My Commission Expires November 02, 201_

Index No.:            Year: 2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
========================================================

GUSTAVO CAMILO, individually,
and on behalf of all others similarly situated,

                               Plaintiffs,

    vs.

UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC,
UBER USA LLC, ACHT-NY, LLC, ACHTZEHN-NY, LLC,
DANACH-NY, LLC, DREIST-NY, LLC, DREIZEHN-NY,
LLC, DRINNEN-NY, LLC, EINS-NY, LLC, ELF-NY, LLC,
EINUNDZWANZIG- NY, LLC, FUNF-NY, LLC,
FUNFZEHN-NY LLC, GRUN, LLC, HINTER, LLC,
NEUN-NY, LLC, NEUNZEHN-NY, LLC, SCHMECKEN,
LLC, SECHS-NY, LLC, SIEBEN-NY, LLC, SIEBZEHN-NY,
LLC, UNTER, LLC, VIER-NY, LLC, VIERZEHN-NY, LLC,
WEITER, LLC,  ZEHN-NY,  ZWANZIG-NY  LLC,
ZWEI-NY, LLC, ZWOLF-NY, LLC, jointly and severally,

                         Defendants.
========================================================

**CLASS ACTION SUMMONS & COMPLAINT**

========================================================

LAW OFFICES OF JOSEPH A. ROMANO, P.C.

Attorneys for Plaintiffs

Office and Post Office Address, Telephone

1776 Eastchester Road, Suite 210

Bronx, New York 10461

(855) 965-1515

========================================================