UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUSTAVO CAMILO, individually, and on behalf of others similarly situated, <br><br> *Plaintiff*, <br><br> -*against*- <br><br> UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC, UBER USA LLC, ACHT-NY, LLC, ACHTZEHN-NY, LLC, DANACH-NY, LLC, DREIST-NY, LLC, DREIZEHN-NY, LLC, DRINNEN-NY, LLC, EINS-NY, LLC, ELF-NY, LLC, EINUNDZWANZIG- NY, LLC, FUNF-NY, LLC, FUNFZEHN-NY LLC, GRUN, LLC, HINTER, LLC, NEUN-NY, LLC, NEUNZEHNNY, LLC, SCHMECKEN, LLC, SECHS-NY, LLC, SIEBEN-NY, LLC, SIEBZEHN-NY, LLC, UNTER, LLC, VIER-NY, LLC, VIERZEHN-NY, LLC, WEITER, LLC, ZEHN-NY, ZWANZIG-NY LLC, ZWEI-NY, LLC, ZWOLF-NY, LLC, THE BLACK CAR FUND, BLACK CAR ASSISTANCE CORPORATION and NEW YORK BLACK CAR OPERATORS INJURY COMPENSATION FUND, INC., RASIER, LLC, BRAINTREE TECHNOLOGY SOLUTIONS, LLC and BRAINTREE PAYMENT SOLUTIONS, LLC jointly and severally, <br><br> *Defendants.* | Case No. 17-cv-9508-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF THE BLACK CAR DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,
FOR A STAY PENDING ARBITRATION**

Jeffrey M. Eilender
Bradley J. Nash
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
(212) 344-5400
*Attorneys for the Black Car Defendants*

February 12, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 4

    A.    Plaintiff's Contractual Relationship With Uber ........................................ 4

    B.    The Black Car Fund Provides Workers' Compensation Coverage for
        Black Car Drivers ................................................................................. 5

    C.    The BCAC Is a Trade Organization Whose Only Connection to this
        Case Is That it Appoints a Majority of the Members of the Black Car Fund ........ 9

    D.    Plaintiff's Amended Complaint .......................................................... 9

ARGUMENT ............................................................................................................ 10

    I.    THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF ARE NOT
        ASSERTED AGAINST THE BLACK CAR DEFENDANTS ........................... 10

    II.    PLAINTIFF PLEADS NO BASIS FOR A FIDUCIARY DUTY CLAIM
        AGAINST THE BLACK CAR DEFENDANTS .................................... 12

        A.  The Black Car Defendants Have No Duty or Ability Under Article
           6-F to Enforce Members' Compliance With Their Contracts with
           Drivers ......................................................................................... 12

        B.  Plaintiff Cannot Bring a Common Claim Based on an Alleged
           Violation of a Statutory Duty, Where the Statute Provides No Private
           Right of Action ............................................................................. 15

    III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THE CLAIMS
        AGAINST THE BLACK CAR FUND AND BCAC, PENDING
        ARBITRATION OF THE CLAIMS AGAINST THE UBER
        DEFENDANTS ............................................................................... 16

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

*Achtman v. Kirby, McInerney & Squire*, LLP,
    464 F.3d 328 (2d Cir. 2006) .............................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 10

*Balk v. 125 W. 92nd St. Corp.*,
    24 A.D.3d 193 (1st Dep't 2005) ........................................................ 11

*Batas v. Prudential Ins. Co. of Am.*,
    281 A.D.2d 260 (1st Dep't 2001) ...................................................... 14

*BCG Partners, Inc. v. Avison Young (Canada) Inc.*,
    156 A.D.3d 531 (1st Dep't 2017) ...................................................... 14

*BSG Resources (Guinea) Limited v. Soros*,
    2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017) .............................. 16, 18

*Childers v. New York and Presbyterian Hosp.*,
    36 F. Supp. 3d 292 (S.D.N.Y. 2014) ................................................ 12

*Clark Motor Co., Inc. v. Manufacturers and Traders Trust Co.*,
    360 Fed. Appx. 340 (3d Cir. 2010) .................................................... 15

*Employers Ins. Co. of Wausau v. Crouse-Community Center, Inc.*,
    489 F. Supp. 2d 176 (N.D.N.Y. 2007) .............................................. 14

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .............................................................................. 10

*Fishman v. Philadelphia Fin. Life Assur. Co.*,
    2016 WL 2347921 (S.D.N.Y. May 3, 2016) ...................................... 13

*Flickinger v. Harold C. Brown & Co.*,
    947 F.2d 595 (2d Cir. 1991) .............................................................. 12

*Global Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006) .............................................................. 10

*Grochowski v. Phoenix Construction*,
    318 F.3d 80 (2d Cir. 2003) ................................................................ 16

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011) .............................................................. 12

*Katsoris v. WME IMG, LLC*,
    237 F. Supp. 3d 92 (S.D.N.Y. 2017) ............................................ 17, 18

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
    2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011) .................................... 16

*Martinez v. Capital One,*
  863 F. Supp. 2d 256 (S.D.N.Y. 2012) ................................................................... 16

*PetEdge, Inc. v. Garg,*
  234 F. Supp. 3d 477 (S.D.N.Y. 2017) ................................................................... 12

*Randall's Island Acquatic Leisure, LLC v. City of N.Y.,*
  92 A.D.3d 463 (1st Dep't 2012) .......................................................................... 10

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto Ins. Co.,*
  196 F. Supp. 2d 378 (S.D.N.Y. 2002) ................................................................... 16

*Vitro S.A.B. de C.V. v. Aurelius Capital Management, L.P.,*
  99 A.D.3d 564 (1st Dep't 2012) .......................................................................... 10

*Wilson v. Dantas,*
  29 N.Y.3d 1051 (2017) ....................................................................................... 14

*Winter Inv'rs, LLC v. Panzer,*
  1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) ........................................................... 17

## OTHER AUTHORITIES

9 U.S.C. § 3 ......................................................................................................... 1

N.Y. Exec. Law § 160-gg ...................................................................................... 9

N.Y. Exec. Law § 160-jj(2) ............................................................................... 4, 7

N.Y. Exec. Law § 160-jj(4) ........................................................................... 14, 15

N.Y. Exec. Law § 160-jj(7) .................................................................................. 8

N.Y. Exec. Law § 160-oo ..................................................................................... 8

N.Y. Labor Law § 193 ..................................................................................... 9, 11

## RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Defendants Black Car Assistance Corporation ("BCAC") and New York Black Car Operators' Injury Compensation Fund, Inc. (the "Black Car Fund") (together with the BCAC, the "Black Car Defendants")[1] submit this memorandum of law, together with the Declaration of Bradley J. Nash, and the exhibits annexed thereto, in support of their motion to dismiss the sole claim asserted against them in the Amended Class Action Complaint ("Amend. Compl."), for breach of fiduciary duty, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, or in the alternative, staying the claim against them, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, and the Court's inherent power, pending the arbitration of Plaintiff's claims against other defendants (the "Uber Defendants"), which are subject to a mandatory arbitration agreement.

## PRELIMINARY STATEMENT

This is a copycat class action that follows on the heels of two other class actions against Uber asserting the very same claims about alleged improper deductions from payments to drivers.  Although Plaintiff's Amended Complaint largely tracks the pleadings in the earlier cases (indeed, whole sections are lifted word-for-word), Plaintiff added two additional New York Defendants – the Black Car Fund and BCAC – alleging that they are secondarily liable for failing to "prevent and/or discover," Uber's alleged wrongful deductions.  (Nash Decl., Ex. A ("Amend. Compl.") ¶ 142).  Plaintiff's counsel evidently hoped that adding local parties would support a motion to remand the case to state court.  However, as explained in the accompanying opposition to Plaintiff's remand motion, Plaintiff's efforts to avoid the jurisdiction of this Court are unavailing.

---

[1] The Amended Complaint also names "The Black Car Fund" as a defendant, but there is no separate entity by that name; rather, it is a trade name used by the Black Car Operators' Injury Compensation Fund, Inc.

It is equally clear that Plaintiff Camilo's sole claim against the Black Car Defendants, for breach of an alleged "fiduciary duty," must be dismissed because the Amended Complaint pleads no facts to establish the existence of any such duty.  Because the Black Car Fund was created by a New York State statute, any obligations it owes to Plaintiff and the would-be class members would have to be contained in the statute.  As shown below, however, the governing statute does not impose any fiduciary duty on the Black Car Fund.  And even if there were such a statutory duty, Plaintiff cannot bring a common law claim based solely on an alleged violation of the statute, which does not provide a private cause of action.  Moreover, even if Plaintiff's theory were viable, any liability of the Black Car Defendants would depend on a finding of wrongdoing against the Uber Defendants, who are separately moving to compel arbitration of Plaintiff's claims.  Accordingly, to the extent the claims against the Black Car Defendants are not dismissed, the Court should stay those claims, pending the arbitration of the claims against the Uber Defendants.

Plaintiff is allegedly a driver who provided for-hire vehicle transportation services to passengers through the ride-sharing company, Uber.  Using Uber's smartphone application (the "Uber App"), riders connect with drivers who provide rides; the riders make payment to Uber for the rides; and Uber remits those payments to the driver, less certain fees.  Plaintiff – purporting to assert claims on his own behalf, and on behalf of a putative class of similarly-situated drivers – alleges that *Uber* violated its contract with Plaintiff, and New York's Labor Law, by allegedly making improper deductions from the amounts it remitted to Plaintiff for services he provided to riders.  According to the Amended Complaint, one of the alleged improper deductions was for a statutorily-mandated surcharge paid to Defendant Black Car Fund – a not for profit corporation established pursuant to Article 6-F of the New York Executive Law to provide Workers'

Compensation Coverage to drivers in the for-hire vehicle industry, including those affiliated with Uber.

Plaintiff does not (and cannot) allege that the Black Car Fund and BCAC were themselves responsible for any improper deductions from the amounts Uber remitted to Plaintiff. Instead, he purports to assert a claim against the Black Car Defendants for allegedly breaching a "fiduciary duty" by failing to "monitor and protect drivers" from improper charges by Uber. (Amend. Compl. ¶ 30). This claim fails because – apart from conclusory assertions that need not be credited on a motion to dismiss – Plaintiff does not plead any plausible factual basis for this supposed fiduciary duty, and, in fact, the statute that created the Black Car Fund plainly negates such a duty.

Plaintiff concedes that he had no contract with Black Car Fund that could give rise to such a duty. (Amend. Compl. ¶ 25). His relationship to BCAC is even more tenuous: indeed, its sole connection to this case is that it appoints a majority of the Black Car Fund's directors. Nor does Article 6-F of the Executive Law create any duty for the Black Car Defendants to "oversee" or "audit" Uber's payments to its drivers, as the Amended Complaint incorrectly suggests. The Black Car Fund's mandate under the Executive Law is to provide Workers' Compensation coverage for driver's affiliated with dispatch bases that are members of the Fund. To enable the Black Car Fund to pay Workers' Compensation insurance benefits and otherwise fund its operations, the Executive Law requires that each dispatch base (such as Uber) pay to the Fund a "surcharge" currently equal to 2.5 percent of the total amounts invoiced to its customers (i.e., the riders). The surcharge is added to the invoice sent to the customer.

But the statute is clear that the dispatch base is liable to the Black Car Fund for the amount of the surcharge (*i.e.*, 2.5 percent of "all payments received" from its customers for

transportation services) "regardless of whether the surcharge was billed or charged" to the customer.  N.Y. Exec. Law § 160-jj(2).  Thus, the only relevant consideration for determining the amount of a dispatch base's surcharge obligation is the total amount billed to the customer.  What payments the base must remit to the driver – and what charges and fees the base can deduct from those payments – is determined by the contract between the base and the driver.  Article 6-F has nothing to say on that issue, and the Black Car Fund has no obligation, under the Executive Law or otherwise, to ensure that its member bases comply with their contractual obligations to their affiliated drivers.  Thus, there is simply no basis for Plaintiff's contention that the Black Car Defendants owned him a fiduciary duty to police Uber's compliance with its contracts with affiliated drivers.

Finally, the Uber Defendants are separately moving to compel arbitration of the claims against them.  If that motion is granted, the breach of fiduciary duty claim against the Black Car Defendants (to the extent they are not dismissed outright), should at a minimum be stayed pending the conclusion of that arbitration.  Plaintiff's theory of liability (that the Black Car Defendants failed to prevent the Uber Defendants from making improper deductions) depends on a showing that the Uber Defendants did something wrong in the first instance – an issue that will be determined in the arbitration.  Therefore, in the interest of efficiency, and to avoid the risk of inconsistent rulings, the stay should apply to all arbitrable and non-arbitrable claims.

## FACTUAL BACKGROUND

### A.    Plaintiff's Contractual Relationship With Uber

Plaintiff Camilo alleges that he is a driver who provided for-hire transportation services to riders, through Uber's software.  Plaintiff alleges that "Uber passengers [would] pay a full fare amount to Uber, which Uber . . . remits to the Driver after deducting its fee of between 20 to

28%, depending on the type of service, vehicle used for the trip and tenure of the Driver."
(Amend. Compl. ¶ 33).

Plaintiff claims that in order to gain access to Uber's platform, he entered into a contract
with one or more of the Uber Defendants.[2]  He alleges that the Uber Defendants violated the
contract by (1) making unauthorized deductions from the payments remitted to him – including
unauthorized deductions for the Black Car Fund surcharge, (Amend. Compl. ¶¶ 15, 156), and for
state sales tax (*id.* ¶ 177); and (2) otherwise improperly calculating the fees it charged to him.

### B.  The Black Car Fund Provides Workers' Compensation Coverage for Black Car Drivers

In 1999, Black Car Fund was established by statute (Article 6-F of the New York
Executive Law)[3] as a not-for-profit corporation for the purpose of providing Workers'
Compensation coverage statewide for "Black Car" drivers – i.e., independent drivers affiliated
with a dispatching base, licensed by the New York Taxi and Limousine Commission or other
local licensing authorities.  *See generally* N.Y. Exec. Law §§ 160-cc–160-oo.  The Black Car
Fund "perform[s] its functions in accordance with" a "plan of operation," which is filed with the
New York Secretary of State, and also constitutes the Fund's by-laws.  *Id.* §§ 160-dd, 160-gg;
Nash Decl., Ex. C (Black Car Fund Plan of Operation).

As the legislative history of Article 6-F explains, before the Black Car Fund was
established, it was not clear whether black car drivers were eligible for Workers' Compensation
benefits under policies purchased by their affiliated bases.  (Nash Decl., Ex. D (Governor's Bill
Jacket 1999, Chapter 49) at 25).  The legislation – which was modeled on an earlier fund set up

---

[2] The Amended Complaint suggests that drivers' contracts were with Defendants Uber Technologies, Inc. and/or
Uber Logistix, LLC and/or Uber USA, LLC.  (Amend. Compl. ¶¶ 50, 56, 59.)  Plaintiff alleges that he had no
contract with the other Uber Defendants, which are the dispatch bases.  (*Id.* ¶ 232).

[3] For the Court's convenience, a complete copy of Article 6-F of the Executive Law is attached to the Nash Decl. as
Exhibit B.

for horse-racing jockeys – was designed to "end [] the protracted debate over the status of black car drivers under the [Workers' Compensation Law]"; avoid further "costly litigation" and expenditure of "scarce resources" by the Workers' Compensation Board; and "provide a practical and cost-effective means of securing the provision of workers' compensation benefits to black car drivers." *Id.*

The membership of the Black Car Fund is composed of all dispatch bases (referred to in the statute as "central dispatch facilities") that: (i) dispatch black-car drivers to both pick up and discharge passengers in New York State; (ii) do more than ninety percent of their business on a non-cash basis; and (iii) own less than fifty percent of the cars they dispatch. *See id.* § 160-cc(3) (defining "central dispatch facility") & § 160-hh (requiring all central dispatch facilities to be members of the Black Car Fund). As alleged in the Amended Complaint, Uber created subsidiaries that function as dispatch bases "to be able to comply with and provide [Workers' Compensation] coverage" in New York for its affiliated drivers through the Black Car Fund.[4] (Amend. Compl. ¶ 9).

The Black Car Fund is charged with providing Workers' Compensation benefits to black car drivers that are injured in the course of providing transportation services for customers of a member dispatch base. The statute gives the Black Car Fund the option to purchase Workers' Compensation coverage from an insurance company, but it has not elected to exercise that option since 2007, and instead provides the benefits itself, pursuant to Section 160-ii(1)(a). For purposes of Workers' Compensation, the Black Car Fund is regarded as the "employer" of the

---

[4] The following Uber dispatch bases are named as Defendants in the Amended Complaint: Acht-NY, LLC, Achtzehn-NY, LLC, Danach-NY, LLC, Dreist-NY, LLC, Dreizehn- NY, LLC, Drinnen-NY, LLC, Eins-NY, LLC, Einundzwanzig-NY, LLC, Elf-NY, LLC, Funf- NY, LLC, Funfzehn-NY LLC, Grun, LLC, Hinter, LLC, Neun-NY, LLC, Neunzehn-NY, LLC, Rasier LLC, Schmecken, LLC, Sechs-NY, LLC, Sieben-NY, LLC, Siebzehn-NY, LLC, Unter, LLC, Vier, NY, LLC, Vierzehn- NY, LLC, Weiter, LLC, Zehn-NY, Zwanzig-NY LLC, Zwei-NY, LLC, Zwolf- NY LLC.

covered drivers.  *Id.*  But this means only that the Black Car Fund is responsible for providing or procuring Workers' Compensation coverage for the drivers (which is the obligation of an employer under New York law).  The Black Car Fund is not an "employer" of the drivers in any other sense:  *i.e.*, it does not hire drivers, give them assignments, supervise their work, pay them, etc.  Plaintiff concedes that he has no contract with the Black Car Fund, and alleges that it is "Uber" alone that "collects all monies from passengers and disburses such monies according to its own accounting procedures and policies."  (Amend. Compl. ¶¶ 25-26).

To enable the Black Car Fund to pay workers' compensation insurance benefits, and otherwise fund its operations, the Executive Law requires the member dispatch bases to remit to the Fund a "surcharge," now equal to 2.5 percent of the total amounts invoiced to its customers (i.e., the riders).[5]  N.Y. Exec. Law § 160-jj(2) (authorizing the Black Car Fund to "establish a proposed uniform percentage surcharge"); Nash Decl., Ex. C at 14 (setting the surcharge at 2.5 percent).  The surcharge may be added to the invoices sent to the customers of the dispatch base.  But the statute is clear that a dispatch base is liable to the Black Car Fund for the amount of the surcharge (i.e., 2.5 percent of "all payments received" from its customers for transportation services) "regardless of whether the surcharge was billed or charged" to the customer.  *Id.*  To ensure that the Fund receives the required payments, the members are required to "submit to the fund with its monthly payment a detailed accounting of the charge and surcharge amounts **charged to and received from customers** for covered services during the previously month." *Id.* § 160-jj(4) (emphasis added); Nash Decl., Ex. C at 14.  The Black Car Fund has no right to, and does not, receive any accounting of the amount of any payments the dispatch bases remit to the drivers, or any fees or other deductions the bases make from any such payments.

---

[5] Until 2013, the surcharge was set at 2%.

The Black Car Fund also has the right – but not the duty – "to conduct financial audits of its members to verify their compliance with the requirements of [Article 6-F of the Executive Law]," *id.* § 160-jj(6) (providing that "the fund *shall have the power* . . . to conduct financial audits of its members") (emphasis added); *see also id.* § 160-gg(2)(f) (referring to the "audit rights granted to [the Black Car Fund]" under the statute), and requires the members to make available "all books, records and other documents . . . that may be relevant to such audits." *Id.* § 160-jj(6).  As the legislative history of Article 6-F confirms, the purpose of the Black Car Fund's audits, and of the monthly accountings, is to "monitor indebtedness" of the members to the Fund.  Nash Decl., Ex. D at 12.   Thus, such audits examine records concerning the amounts charged to customers of the base (since that is the basis for determining the amount of the surcharge), and not any amounts the base remits to the drivers, which is determined by the terms of the driver's contract with the base, not by the Executive Law or the Black Car Fund's Plan of Operation.[6]

Finally, the Executive Law provides for administrative proceedings before the "local licensing authority" (*e.g.*, in New York City, the Taxi and Limousine Commission) or the Department of State to adjudicate and assess fines and penalties for violations of the bases' obligations under the statute, and permits the Black Car Fund to refer a dispatch base to the licensing authority for such a hearing if it "believes that [the dispatch base] has failed to pay the fund the assessments due pursuant to [the statute]."  N.Y. Exec. Law § 160-oo.  Like the rest of Article 6-F, this provision says nothing about the amounts due to drivers.

---

[6] When the Black Car Fund purchased Workers' Compensation insurance from third-party insurers, the Executive Law required the bases to make records of payments to drivers available to "insurer[s] providing coverage to the [Black Car Fund]" for the purpose of payroll audits, which determine the policy premium.  N.Y. Exec. Law § 160-jj(7).  However, since 2007, the Black Car Fund's obligations have not been covered by a Workers' Compensation policy bought from a third-party insurance company.  Thus, it pays no premiums, and there are no premium audits.

C.    **The BCAC Is a Trade Organization Whose Only Connection to this Case Is That it Appoints a Majority of the Members of the Black Car Fund**

The Amended Complaint correctly alleges that Defendant BCAC "is a not-for-profit corporation organized under New York law, and serves as a trade association and leading advocate for black car bases in New York." (Amend. Compl. ¶ 248.)  It was instrumental in efforts to create the Black Car Fund.  (*Id.*).  Under Article 6-F of the Executive Law, the BCAC has the right to appoint a majority of the directors of the Black Car Fund's board.  The remaining directors are the Secretary of State, who holds the position *ex officio*, and others chosen by the Governor.  N.Y. Exec. Law § 160-gg.

Apart from its statutory right to appoint members of the Black Car Fund's board of directors, BCAC has no connection to this case whatsoever.

D.    **Plaintiff's Amended Complaint**

Plaintiff filed this action on his own behalf, and behalf of a putative class of drivers, alleging (1) that Uber made improper deductions from payments remitted to them (including improper deductions for the Black Car Fund surcharge and state sales taxes), and (2) that the Black Car Fund breached an alleged "fiduciary duty" to the drivers by failing to detect and prevent the supposed improper charges.  With respect to the Black Car Fund surcharge, the Amended Complaint alleges that Uber billed the surcharge to riders, but "then also charged each driver the same 2.5% fee."  (Amend. Compl. ¶ 15).

The Amended Complaint asserts four claims for relief: (1) a claim against the Uber Defendants for "unlawful wage deductions" under Section 193 of the New York Labor Law; (2) a claim against the Uber Defendants for breach of contract, fraud and unjust enrichment; (3) a claim against the Uber Defendants for breach of contract (which appears to overlap entirely with

9

the second claim); and (4) a claim against the Black Car Defendants for breach of an alleged "fiduciary duty."

## ARGUMENT

In adjudicating a motion to dismiss under Rule 12(b)(6), the court assumes the truth of all factual allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006). However, neither "legal conclusions" nor "conclusory statements" are alone sufficient, as such statements are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."). Thus, the Court must identify a complaint's non-conclusory factual allegations and then determine whether those allegations, taken as true and construed in the plaintiff's favor, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## I.     THE FIRST, SECOND AND THIRD CLAIMS FOR RELIEF ARE NOT ASSERTED AGAINST THE BLACK CAR DEFENDANTS

Although in instances, Plaintiff appears to refer to all the "Defendants" as an undifferentiated group, it is clear that the first three claims in the Amended Complaint are directed only to the Uber Defendants – and not the Black Car Defendants.

The Second and Third Claims are for breach of contract. But Plaintiff concedes that he has no contract with the Black Car Defendants. (Compl. ¶ 25.) It is hornbook law that "[t]here can be no breach of contract claim against a non-signatory to the contract." *Randall's Island Acquatic Leisure, LLC v. City of N.Y.*, 92 A.D.3d 463, 463 (1st Dep't 2012) (granting motion to dismiss breach of contract claim); *see also Vitro S.A.B. de C.V. v. Aurelius Capital Management,*

*L.P.*, 99 A.D.3d 564, 564 (1st Dep't 2012) ("The motion court properly dismissed the breach of contract claim against the non-signatory defendants because in the absence of a contract, there could be no breach."); *Balk v. 125 W. 92nd St. Corp.*, 24 A.D.3d 193, 193 (1st Dep't 2005) ("Since the individual defendants are not signatories to the proprietary lease . . . no cause of action for breach of contract can be asserted against them.").[7]  Thus, the Second and Third Claims in the Amended Complaint cannot state a claim against the Black Car Defendants.

The First Claim, for alleged violations of Section 193 of New York's Labor Law, similarly cannot apply to the Black Car Defendants.  The statute provides that "[n]o **employer** shall make any deduction from the wages of an employee," except those permitted by law or authorized by the employee.  N.Y. Labor Law § 193 (emphasis added).  There is no conceivable claim that BCAC was Plaintiff's "employer" – indeed, it has no relationship with him whatsoever.  The Black Car Fund was also not Plaintiff's "employer," expect for the limited purpose of providing Workers' Compensation insurance coverage for him, as Plaintiff acknowledges.  (Amend. Compl. ¶ 233 ("all Drivers are employees of the Black Car Fund *for the purpose of workers compensation benefits*") (emphasis added)).  Moreover, Plaintiff concedes that his only contract was with **Uber**; that any payments he received were remitted to him by **Uber**; and that the alleged deductions which form the basis for his Labor Law claim were made by **Uber** – not the Black Car Defendants.  (Amend. Compl. ¶¶ 25-26; *id.* ¶ 33).  Thus, the Black Car Fund cannot be responsible for any alleged violation of the Labor Law.

---

[7] The heading for the Second Claim also refers to "Fraud" and "Unjustenrichment" [*sic*].  However, these cannot be claims against the Black Car Defendants either.  Indeed, the Amended Complaint does not allege any false statement of fact by the Black Car Defendants (let alone with particularity); any reasonable detrimental reliance by Plaintiff; or any other element of a fraud claim.  Nor is there any allegation that the Black Car Defendants received any payment to which they were not entitled.

For these reasons, the First, Second and Third claims cannot state a claim against the Black Car Defendants.

## II.     PLAINTIFF PLEADS NO BASIS FOR A FIDUCIARY DUTY CLAIM AGAINST THE BLACK CAR DEFENDANTS

The elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted). "A fiduciary relationship exists under New York law 'when one . . . is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (citing *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (other citations omitted)).

Plaintiff's fiduciary duty claim against the Black Car Defendants fails to state a claim for relief because (1) he does not plead any basis for the existence of such a fiduciary duty; and (2) even if Article 6-F did create such a duty (which it does not), Plaintiff would nevertheless be precluded from bringing a common law cause of action based on an alleged violation of a statute that does not provide for a private right of action.

### A.     The Black Car Defendants Have No Duty or Ability Under Article 6-F to Enforce Members' Compliance With Their Contracts with Drivers

The breach of fiduciary duty claim fails at the threshold because Plaintiff does not plead any non-conclusory basis for the alleged fiduciary duty. *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 498 (S.D.N.Y. 2017) (conclusory allegation that defendant "assumed a duty to act in [Plaintiff's] best interest" was "nothing more than [a] bare recitation[] of the legal elements of a fiduciary duty" and failed to state a claim for relief). Plaintiff asserts that, pursuant to Article 6-F, the Black Car Fund and BACAC "intentionally took on the responsibility to oversee member's actions for collections of said surcharges," (Amend. Compl. ¶ 242), and therefore,

allegedly assumed a fiduciary duty to prevent the Uber from deducting the amount of the surcharge in violation of Uber's contract with Plaintiff. There is no support for this claim in the actual text of the statute.

As an initial matter, Article 6-F does not impose any obligations on BCAC whatsoever with respect to Plaintiff or any other drivers in the putative class. Indeed, the only mention of BCAC is in Section 160-ff – a provision that gives BCAC the right to appoint a majority of the directors of the Black Car Fund. Plaintiff does not allege any theory – and there is none – under which the mere act of appointing directors to the board of a company would create a fiduciary duty to other third parties. Thus, the breach of fiduciary duty claim against BCAC must be dismissed.

The Amended Complaint also fails to allege the existence of a fiduciary duty on the part of the Black Car Fund. Plaintiff asserts that the Black Car Fund breached a duty to the drivers by "failing to operate the fund" in accordance with Article 6-F, thereby "failing to stop and/or discover . . . wrongful surcharge deductions from drivers." (Amend. Compl. ¶¶ 142-43; *id.* ¶ 30 (alleging that Plaintiff "relied to [his] detriment that [the Black Car Fund] would monitor and protect drivers from member bases unlawfully collecting [] surcharges")). However, there is no plausible basis for these assertions because nothing in Article 6-F obligates the Black Car Fund to police Uber's compliance with its contractual obligations to its drivers. Indeed, under the statute, the Black Car Fund's sole mandate vis-à-vis the drivers is to provide Workers' Compensation benefits to them.

Insofar as the Black Car Fund acts as an insurer, it is well-established that the relationship between an insurance company to its insured "does not give rise to a fiduciary duty." *Fishman v. Philadelphia Fin. Life Assur. Co.*, 2016 WL 2347921, at *10 (S.D.N.Y. May 3, 2016) (citing

*Batas v. Prudential Ins. Co. of Am.*, 281 A.D.2d 260, 264 (1st Dep't 2001)); *see also Employers*

*Ins. Co. of Wausau v. Crouse-Community Center, Inc.*, 489 F. Supp. 2d 176 (N.D.N.Y. 2007)

("an insurer owes no general fiduciary duty to the insured").  The same is true of the Black Car

Fund's statutory role as Plaintiff's "employer" for Workers' Compensation purposes.  Leaving

aside the fact that the Fund's status an "employer" is effectively a legal fiction to enable it to

provide Workers' Compensation benefits for the drivers affiliated with its members bases, New

York law is clear that "[a]n employment relationship . . . in itself does not create a fiduciary

relationship."  *Wilson v. Dantas*, 29 N.Y.3d 1051, 1064 (2017); *accord BCG Partners, Inc. v.*

*Avison Young (Canada) Inc.*, 156 A.D.3d 531, 532 (1st Dep't 2017) ("no fiduciary relationship

arises from an employment relationship").

        Nor does anything about the operations of the Black Car Fund establish any fiduciary

duty to Plaintiff.  The fact that the Black Car Fund collects from its member bases a surcharge,

calculated as a percentage of the total amount billed to customers of the base, does not give the

Fund the right – much less the duty – to monitor its members' payments to drivers, including any

amounts that may be deducted from such payments.  Indeed, as the statute makes clear, the only

relevant consideration for determining the amount of a dispatch base's surcharge obligation is

the total amount billed to the customer.  What payments the base must remit to the driver – and

what charges and fees the base can deduct from those payments – is not addressed in Article 6-F.

Thus, the Black Car Fund receives from its members a monthly accounting of "charge and

surcharge amounts charged to and received from customers for covered services during the

previous month."  N.Y. Exec. Law § 160-jj(4).  That accounting does not include payments made

to (or deductions taken from) the drivers, which is irrelevant to the calculation of the surcharge, and completely outside the scope of the Article 6-F.[8]

Plaintiff makes much of the fact that the statute gives the Black Car Fund the right "to conduct financial audits of its members to verify their compliance with the requirements of [Article 6-F]." *Id.* § 160-jj(6). But the *right* to conduct an audit does not imply a *duty* to do so – much less a duty to conduct the audit for the benefit of third parties. *See Clark Motor Co., Inc. v. Manufacturers and Traders Trust Co.*, 360 Fed. Appx. 340, 345 (3d Cir. 2010) (contract giving party the "right to conduct an audit" did not give rise to a "duty to do so"). Moreover, the purpose of the Black Car Fund's audits under Article 6-F is to "monitor indebtedness" of the members to the Fund, Nash Decl., Ex. D at 12, not to ensure the bases' compliance with their contractual obligations to their affiliated drivers. Therefore, the Black Car Fund's statutory audit rights cannot be the basis for any fiduciary duty to Plaintiff.

For all these reasons, Plaintiff has failed to allege that the Black Car Defendants owed a fiduciary duty to him, or to any members of the putative class, and his Fourth Claim must therefore be dismissed.

**B.     <u>Plaintiff Cannot Bring a Common Claim Based on an Alleged Violation of a Statutory Duty, Where the Statute Provides No Private Right of Action</u>**

Even if Article 6-F did impose a duty on the Black Car Defendants (which it does not), Plaintiff's breach of fiduciary duty claim would still fail. Plaintiff does not purport to bring a direct claim against the Black Car Defendants under the Executive Law – nor could he, because the statute does not provide a private right of action. This also necessarily precludes Plaintiff

---

[8] Importantly, Plaintiff alleges that Uber *did* bill the surcharge to its customers; his complaint is that, in addition to those charges, Uber double-dipped by deducting the surcharge amount from the payments it remitted to him. (Amend. Compl. ¶ 15). Because Plaintiff does not dispute that Uber billed its customers for the amount of the surcharge, it follows that the monthly accounting the Black Car Fund would have received from Uber of "the charge and surcharge amounts charged to and received from customers," N.Y. Exec. Law § 160-jj(4), would not have revealed any irregularity.

from bringing a common law fiduciary duty claim for an alleged breach of a duty created by the statute.  It is well-established that "a plaintiff cannot maintain a common law [] claim based on conduct governed by a statute when that statute offers no private right of action."  *Martinez v. Capital One*, 863 F. Supp. 2d 256, 258 (S.D.N.Y. 2012).  Courts do not permit such an "end run" around the legislature's decision not to provide a private right of action to enforce the statute. *Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002) (holding that insurer could not recover for violation of state statute under common law where the statute provided no private right of action).

Plaintiff's breach of fiduciary duty claim is barred for this independent reason, as well.

## III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY THE CLAIMS AGAINST THE BLACK CAR FUND AND BCAC, PENDING ARBITRATION OF THE CLAIMS AGAINST THE UBER DEFENDANTS

In the alternative, to the extent the Court does not dismiss the breach of fiduciary duty claim against the Black Car Defendants, it should stay the claim pending arbitration of Plaintiff's claims against the Uber Defendants.

"Within the Court's inherent power to manage its docket is the discretion to stay nonarbitrable claims in favor of a pending arbitration, even where the parties in the litigation and the arbitration are not identical."  *BSG Resources (Guinea) Limited v. Soros*, 2017 WL 5897450, at *3 (S.D.N.Y. Nov. 29, 2017) (citations omitted).  "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution."  *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011).  "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims

and the arbitrated claims." *Winter Inv'rs, LLC v. Panzer*, 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995).

Here, the claim against the Black Car Defendants is entirely dependent on a finding of wrongdoing by the Uber Defendants.  That is, the Black Defendants are accused only of "failing to stop and/or discover . . . [the Uber Defendants' alleged] wrongful surcharge deductions from drivers."  Amend. Compl. ¶ 142; *see also id.* ¶ 23 (alleging that the Black Car Defendants' "failure to review and audit member bases correctly is a Breach of Fiduciary Duty to protect taxi drivers (BCF employees) from illegal deductions" allegedly made by the Uber Defendants).  Thus, for the Black Car Defendants to be held liable, there must first be a finding that the Uber Defendants made the wrongful deductions in the first place.  That threshold issue would be resolved in the arbitration.  It would not only waste judicial resources for this Court to adjudicate the issue of the Uber Defendants' alleged misconduct, while the identical issue is before an arbitrator, but could also result in inconsistent rulings.

In similar circumstances, courts have exercised their authority to stay non-arbitrable claims, where a factual or legal predicate for those claims will be determined in arbitration.  For example, in *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92 (S.D.N.Y. 2017), the plaintiffs brought a claim for breach of fiduciary duty against one defendant (IMG) that was subject to arbitration.  The Court stayed a claim against another defendant (Viacom) for aiding and abetting IMG's breach, even though that claim not subject to arbitration, because resolving the non-arbitrable aiding and abetting claim would "necessarily involve an inquiry into" "an issue the arbitrator must decide" – i.e., "whether IMG did, in fact, breach a fiduciary duty. *Id.* at 111.  The Court found "it appropriate to stay all proceedings in [the] action pending arbitration" because of the "factual overlap between Plaintiffs' non-arbitrable claims against Viacom and their arbitrable

claims against IMG."  *Id.*; *see also BSG Resources*, 2017 WL 5897450, at *4 (staying claim for

tortious interference with contract pending arbitration of breach of contract claim because "[t]o

prove their claims for tortious interference and conspiracy to commit tortious interference,

Plaintiffs must show that there was a breach of contract").  The same result should follow here.

## CONCLUSION

For the reasons explained above, the Black Car Defendants' motion to dismiss the claim

against it in the Amended Complaint, or in the alternative to stay this case pending arbitration of

Plaintiff's claims against the Uber Defendants, should be granted.

Dated: February 12, 2018
      New York, New York

                    **Respectfully Submitted,**

                    **SCHLAM STONE & DOLAN LLP**

                    By:       /s/
                            Jeffrey M. Eilender
                            Bradley J. Nash
                            26 Broadway
                            New York, NY 10004
                            (212) 344-5400
                            bnash@schlamstone.com

                            *Counsel for the Black Car Defendants*