US... SDNY
D... MENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/31/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
GUSTAVO CAMILO, individually, on behalf of
all others similarly situated,

                                  Plaintiffs,

-against-

UBER TECHNOLOGIES, INC., et al.,

                                  Defendants.

---------------------------------------------------------------- X

**ORDER AND OPINION GRANTING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**

17 Civ. 9508 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff, on behalf of all Uber drivers, sues Uber Technologies, Inc., its New York and other subsidiaries (collectively "Uber"), New York Black Car Operators' Injury Compensation Fund, Inc. ("Black Car Fund"),[1] a not-for-profit corporation for providing workers' compensation insurance, and The Black Car Assistance Corporation ("BCAC"), a trade association that appoints the majority of the Black Car Fund directors, alleging violations of N.Y. Labor Law § 193 and other State laws for unlawful wage deductions. The suit was brought in the New York Supreme Court and was timely removed to this court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332 (d). *See* Dkt. No. 1. I previously denied Plaintiff's motion to remand to the Supreme Court. *See* Dkt. No. 43. I now address Defendants' two motions to dismiss.

First, Uber moves to compel arbitration of the claims alleged against the Uber Defendants, to strike Plaintiff's class allegation, and to dismiss the Complaint, on the basis of the arbitration and class waiver clause contained in Plaintiff's agreement with Uber. *See* Dkt. No. 28. Second, the Black Car Fund and BCAC move to dismiss the complaint for failure to state a

---

[1] The Complaint also includes a Defendant "The Black Car Fund." There is no entity by this name.

claim, *see* Rule 12(b)(6), Fed. R. Civ. P., arguing that they owed no fiduciary duty to Plaintiff or the proposed class members. *See* Dkt. No. 31. For the reasons stated below, I grant both motions.[2]

## BACKGROUND

*New York City Regulations and Uber Drivers*

Uber is a company offering a smartphone application that allows drivers to connect with riders looking for transportation. In New York City, transportation providers like Uber drivers are subject to various rules and restrictions promulgated by the Taxi and Limousine Commission ("TLC"), requiring drivers, for example, to obtain certain licenses and insurance policies before acting as "for-hire" drivers in New York City.

Relevant here, TLC regulations require that Uber drivers affiliate themselves with a "dispatching base," which, among other things, arranges for the drivers' workers' compensation insurance coverage. The workers' compensation coverage is provided by the Black Car Fund, a not-for-profit entity established by statute. *See* N.Y. Exec. Law, Article 6-F. The Black Car Fund is funded by the dispatching bases who pay a "surcharge" of 2.5% of all payments received from customers for transportation services. § 160-JJ(2). Uber withholds this surcharge from compensation otherwise owed to the drivers. The Uber bases are required to submit a monthly detailed accounting of the charge and surcharge amounts received from the customers, § 160-JJ(4), and the Black Car Fund has "the power directly or through its agent to conduct financial

---

[2] In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor. *Patane v. Clark*, 503 F.3d 106, 111 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

audits of its members to verify their compliance with the requirements of this article," § 160-JJ(6).

*The Amended Complaint*

According to the Complaint, to comply with these TLC regulations, Uber created various limited liability corporations to act as dispatching bases for its drivers. ¶ 9.[3] These bases in turn paid the required 2.5% fee to the Black Car Fund, which in turn provided workers' compensation insurance to Uber drivers. ¶¶ 10-12. The Complaint alleges that Uber illegally deducted the 2.5% fee (and other fees) from Plaintiff's wages. Whereas Uber was required to charge the *customer* the 2.5% surcharge, the Complaint alleges, Uber charged both the customer *and* the driver for the same said fee. ¶¶ 15, 156.[4]

The Complaint asserts four claims for relief: unlawful wage deduction under N.Y. Labor Law § 193 (Claim 1); breach of contract, fraud, and unjust enrichment (Claim 2); breach of contract (Claim 3);[5] and breach of fiduciary duty (Claim 4). Claim 4 is the only claim that references the Black Car Fund and BCAC, alleging that the Black Car fund "intentionally took on the responsibility to oversee member's actions for collections of said surcharges. Accordingly, they are responsible for member's wrongful collections of said charges." ¶ 242.[6]

*The Arbitration and Class Waiver Clause*

In first registering as an Uber driver, a prospective driver must agree to a technology services agreement with Uber, as updated in the December 11, 2015 Driver Addendum ("Addendum"), which incorporates by reference Uber's 2015 Technology Services Agreement

---

[3] The Amended Class Action Complaint is attached as Exhibit D to Dkt. No. 1.
[4] The procedures for collecting the 2.5% surcharge are not clearly alleged. Presumably, the surcharge is added to charges to Uber customers and withheld from compensation otherwise payable to the drivers.
[5] Claim 3 appears to be duplicative of Claim 2.
[6] From the face of the Complaint it is not clear if the first three claims are asserted against the Black Car Fund and BCAC, or just against Uber.

3

("Agreement"). *See* Dkt. No. 30, Dobbs Decl., Exh. D, E. Plaintiff signed the December 2015 Addendum. *See* Dkt. No. 30, Dobbs Decl. at ¶ 16.

The Addendum, § 7, and the Agreement, § 15.3, provide that, subject to an opt-out right, § 15.3(viii) (providing procedures to opt out and stating that "[a]rbitration is not a mandatory condition of your contractual relationship with Uber."), any claim or dispute arising out of the services agreement will be settled by binding arbitration. The arbitration provision applies to all disputes between the driver and Uber, its fiduciaries, administrators, affiliates, and subsidiaries. § 15.3(i). Furthermore, the Agreement requires "all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action." *See* § 15.3(i); § 15.3(v) ("The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis."). The Agreement provides that the arbitrator will decide all disputes, including those "relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision." § 15.3(i). Finally, both the Addendum and Agreement contain various bolded precautionary language highlighting the importance of the decision to, or not to, opt out of the arbitration provision. *See, e.g.*, Agreement at 1 ("PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW IN SECTION 15.3 CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS ... THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION."); § 15.3 ("WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS

AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION.").

## DISCUSSION

### I. Motion to Compel Arbitration and Strike Class Allegations

*Motion to Compel Arbitration*

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, a written provision to settle a controversy by arbitration is valid and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Here, Plaintiff signed an agreement with Uber requiring that all disputes or issues, including the question of arbitrability, be resolved through binding arbitration. District Courts in this Circuit, reviewing the arbitration provision at issue here, specifically Uber's December 2015 Addendum and Agreement, have considered the agreement to arbitrate (including questions of arbitrability) valid and conscionable. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017); *Kai Peng v. Uber Techs.*, Inc., 237 F. Supp. 3d 36 (E.D.N.Y. 2017). Following this precedent, I find the arbitration provision valid and enforceable, and I grant Defendant's motion to compel arbitration.[7]

Plaintiff had the opportunity to opt-out of the arbitration provision, and the Addendum and Agreement highlight this opportunity in bolded precautionary language. The agreement to arbitrate was not procedurally unconscionable.[8] Furthermore, the agreement delegates the issue

---

[7] Under the FAA, a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). In deciding such motions to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Id.* (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

[8] Because I find that the agreement was procedurally conscionable, I need not address whether it was substantively unconscionable. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

of arbitrability[9] in "clear and unmistakable" language, as required by case law, *see Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003), stating that "disputes arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity" of it shall be decided by the arbitrator, § 15.3(i). This delegation is valid.

*Motion to Strike Class Allegations*

The arbitration provision of the 2015 Addendum and Agreement contains a class waiver, preventing the arbitrator from considering claims on a class or representative basis. On the basis of this waiver, Uber moves to strike the class allegations from the Complaint and to compel Plaintiff to arbitrate his claims on an individual basis. Defendant argues, however, that class waivers like this one are unenforceable in the context of employment agreements and violate the provisions of the National Labor Relations Act ("NLRA").

The Second Circuit has held, *see Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 292 (2d Cir. 2013); *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40 (2d Cir. 2016), that class waivers are enforceable even in the context of employment agreements, although other circuits have held to the contrary, *see, e.g., Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016). More recently, and subsequent to the briefing in this case, the Supreme Court held that waivers of class actions are valid and not precluded by Section 7 of the NLRA, 29 U.S.C. § 157. *See Epic Sys. Corp. v. Lewis*, No. 16-285, 2018 WL 2292444 (U.S. May 21, 2018). According to the Supreme Court, Section 7 focuses on the right to organize unions and bargain collectively and does not express approval or disapproval of arbitration or class action procedures. *See id.* at

---

[9] "'Questions of arbitrability' is a term of art covering dispute[s] about whether the parties are bound by a given arbitration clause as well as disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (internal quotation marks omitted).

*9. Accordingly, the class action waiver of the December 11, 2015 Agreement is valid and enforceable, and I grant Defendants motion to strike the class allegations.

*The Claims against Uber are Stayed*

Since I grant Uber's motion to compel arbitration, this action is stayed pending the arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested.").

## II. Motion to Dismiss for Failure to State a Claim

The Complaint fails to state a plausible claim for relief against the Black Car Fund or BCAC, and I therefore grant Defendants' motion to dismiss the Complaint against Black Car Fund and BCAC.

None of the four claims asserted in the Complaint are plausible against the Black Car Fund or BCAC.[10] Regarding Claim 1, Section 193 of the New York State Labor Law prohibits employers from making "any deduction from the wages of an employee," unless authorized by law. *See* N.Y. Lab. Law § 193. The Black Car Fund or BCAC were not Plaintiff's "employer," nor did they make any deductions from Plaintiff's wages. Uber, Plaintiff's employer, is the proper defendant for this claim, since Uber is the entity paying the employees' wages. *See Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 347 (1997).

Regarding Claim 2 and 3, there is no plausible claim that Black Car Fund or BCAC were unjustly enriched, engaged in fraud, or breached their contractual duties to Plaintiff. The Black Car Fund received its 2.5% fee from Uber, and, whether Uber improperly deducted such fees from Plaintiff did not benefit the Black Car Fund. The Black Car Fund had no contractual

---

[10] As mentioned above, the Complaint does not explicitly assert all four claims against the Black Car Fund and BCAC. Claim 4's reference to these defendants implies that it is the only claim asserted against the Black Car Fund and BCAC, but I need not resolve this ambiguity since none of the four asserted claims state a plausible claim for relief.

7

relationship with Plaintiff. *See* Complaint at ¶ 25. There are no allegations that the Black Car Fund or BCAC engaged in fraudulent activity or were otherwise enriched by Uber's actions.[11]

Finally, regarding Claim 4, there is no plausible claim that the Black Car Fund owed fiduciary duties to Plaintiff and breached those duties by allowing Uber to engage in its illegal deductions. The Black Car Fund is not in a fiduciary relationship with Plaintiff, and it has no duty to monitor the contractual or other obligations between the dispatching bases, *i.e.*, Uber, and the drivers. It has the ability only to monitor, along with a right to audit, whether the dispatching bases paid the relevant surcharge into the fund. *See* § N.Y. Exec. L. § 160-JJ(6). Having collected its 2.5% fee, the Black Car Fund need not be concerned with the relationship and obligations between a dispatching base and the drivers affiliated with it.

## CONCLUSION

For the reasons stated above, Defendants The Black Car Fund, Black Car Assistance Corporation, and New York Black Car Operators Injury Compensation Fund, Inc. are dismissed. As to the remaining Defendants, Plaintiff is directed to arbitrate his claims on an individual basis and this action will be stayed pending the arbitration. The parties are directed to report quarterly, beginning June 30, 2018, of the status of the arbitration proceedings. The Clerk shall terminate the motions (Dkt. Nos. 28, 31) and enter a stay.

SO ORDERED.

Dated: May 31, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[11] BCAC appoints the majority of the directors of the Black Car Fund. *See* Complaint at ¶ 249; N.Y. Exec. L. § 160-FF. BCAC has no other connection to the alleged unlawful deductions of this case.

8